PILLSBURY WINTHROP SHAW PITTMAN LLP
DAVID J. TSAI (SBN 244479)
  david.tsai@pillsburylaw.com
ALEKZANDIR MORTON (SBN 319241)
  alekzandir.morton@pillsburylaw.com
SURUI QU (SBN 332105)
  surui.qu@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
Telephone:      415.983.1000
Facsimile:      415.983.1200

Attorneys for Plaintiff
Wiwynn Corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WIWYNN CORPORATION,<br><br>                    Plaintiff,<br><br>          vs.<br><br>X Corp.,<br><br>                    Defendant. | Case No.  24-cv-05322<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND PROMISSORY ESTOPPEL**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Wiwynn Corporation ("Plaintiff" or "Wiwynn") brings this Complaint against Defendant X Corp. ("Defendant" or "X Corp.") and alleges as follows:

## NATURE OF ACTION

1.      This is an action for damages arising out of X Corp.'s failure to compensate Wiwynn for custom components ordered by Wiwynn with X Corp.'s approval, which were to be used in connection with Wiwynn's manufacture of custom products for X Corp.

## PARTIES

2.      Plaintiff Wiwynn Corporation is a corporation organized and existing under the laws of Taiwan, with its principal place of business located at 8F, 90, Sec.1, Xintai 5th Road, Xizhi District, New Taipei City 22102, Taiwan.

4863-0392-6998

3.     Upon information and belief, Defendant X Corp. is a corporation organized and existing under the laws of Nevada, with a principal place of business located at 1355 Market Street, Suite 900, San Francisco, California 94103.

**JURISDICTION AND VENUE**

4.     This Court has diversity jurisdiction under 28 U.S.C. sections 1332(a)(1), 1332(a)((2) and 2201 because there is complete diversity between Wiwynn and X Corp. and because the amount in controversy exceeds $75,000.

5.     This Court has personal jurisdiction over X Corp. pursuant to a binding jurisdiction clause within an agreement giving rise to the present dispute that was negotiated and executed by the parties, which states that "[a]ny legal action or proceeding arising under this Agreement will be brought exclusively in the federal or state courts located in the Northern District of California and the parties hereby irrevocably consent to the personal jurisdiction and venue therein." Further, this Court has personal jurisdiction over X Corp. because X Corp. has its principal place of business in this District, and, at all relevant times, has conducted commercial activities within the State of California that are substantial, continuous, and systematic.

6.     Venue is proper under 28 U.S.C. § 1391(b) and based on X Corp.'s express prior consent in the agreement to the venue of this Court. Further, venue is proper in this District because X Corp. resides in this District and is subject to personal jurisdiction here, and because a substantial part of the events, acts and omissions giving rise to the claims occurred in this District.

**BACKGROUND**

7.     Wiwynn is an innovative cloud IT infrastructure provider of high-quality computing and storage solutions, plus rack solutions for leading data centers. With the capacity to design, assemble, customize, test, and validate a blend of products all the way up to L11 rack integration services—from the board to the system to the complete rack—Wiwynn has a business model to work directly with customers to design and deliver custom solutions tailored to their individual needs.

8.     On September 24, 2014, recognizing the value that Wiwynn's cloud IT infrastructure products would bring, X Corp. (then known as Twitter, Inc.) contracted with Wiwynn and entered into

1   a Master Purchase Agreement.  A true and correct copy of the Master Purchase Agreement is attached

2   hereto as **Exhibit A**.

3   9.      Pursuant to the terms of the Master Purchase Agreement, effective as of September 24,

4   2014, between Twitter, Inc., for itself and the benefit of its subsidiaries and affiliates, and Wiwynn

5   Corporation ("Master Purchase Agreement"), Twitter, Inc.—now X Corp.—provided to Wiwynn

6   forecast orders for the products it intended to purchase.  In accordance with the Master Purchase

7   Agreement, after receiving these forecasts from X Corp., Wiwynn prepared lists of custom

8   components which it would need to purchase in order to fulfill X Corp.'s forecast requirements.  The

9   Master Purchase Agreement required Wiwynn to submit these lists to X Corp. for approval before it

10  could purchase the custom components.

11  10.     In addition to approving the purchase of the custom components, X Corp. would

12  occasionally direct Wiwynn to purchase additional, non-custom components to be used in the

13  manufacture of products included in X Corp.'s forecasts.  When directing Wiwynn to purchase these

14  non-custom components, X Corp. explicitly approved such purposes in writing and assumed liability

15  for the goods.

16  11.     During the course of dealing of the parties for nearly eight years, X Corp. understood

17  that by approving the purchase of the needed components, X Corp. was assuming liability for these

18  components in the event that the components were not used in the manufacture of products forecasted

19  by X Corp.

20  12.     In its email correspondences with X Corp., Wiwynn informed X Corp. that it would

21  not begin component procurement needed to fulfill X Corp.'s orders under the Master Purchase

22  Agreement until X Corp. approved its list of custom components.

23  13.     In addition, Wiwynn explicitly informed X Corp. that Wiwynn would not procure non-

24  custom components without an express written acknowledgement from X Corp. that X Corp. would

25  assume liability for those components.  Again and again, X Corp. approved these requests in writing.

26  14.     The Parties followed this general course of conduct for approximately eight years

27  without issue.  Prior to November 2022, X Corp. placed orders and made full payments for all of the

28

products made from the components which Wiwynn purchased only after X Corp. confirmed to Wiwynn that it would assume liability for those components.

15.     Beginning in November 2022, X Corp. abruptly stopped making any payments to Wiwynn—including for delivered finished products—and failed to respond to multiple communications from Wiwynn inquiring about and demanding the past-due payments for delivered finished products.

16.     At this time, Wiwynn had procured and paid for, at the direction and approval of X Corp., approximately $120 million of custom components and non-custom components (which X Corp. had expressly authorized Wiwynn to purchase in writing) to manufacture the products forecasted and/or ordered by X Corp.  However, at this time, X Corp. also stopped providing any additional instructions for Wiwynn to manufacture or deliver any finished products to X Corp.  To no avail, Wiwynn made many inquiries to X Corp. as to how X Corp. would resolve its liability for these unused components Wiwynn purchased to fulfill X Corp. orders.

17.     Indeed, since November 2022, Wiwynn has made a number of attempts to communicate with X Corp. by phone and email correspondences to resolve its outstanding liability. However, to date, X Corp. has refused to accept responsibility for the unused components.

18.     In addition to its attempts to resolve the issue of its excess components with X Corp., Wiwynn immediately attempted to mitigate its damages through various means, including but not limited to cancelling approximately $40 million worth of components that had not yet been delivered to Wiwynn, attempting to sell the delivered but unused components to other third parties, attempting to use the unused components in manufacturing products for other Wiwynn customers, and attempting to repurpose the unused components for Wiwynn's use to absorb the relevant costs itself.  Wiwynn has been able to recoup approximately $19 million by re-selling and/or repurposing the unused components that were intended to be used in products for X Corp.  However, due to the custom nature of the components, Wiwynn has been and continues to be limited in its ability to resell and reuse a substantial amount of components—which hold a significant total value—despite Wiwynn's best efforts.

19.     Wiwynn has incurred and continues to incur significant expenses to store the remaining unused components.

20.     Because it was left with no other options, Wiwynn files this action to recover from X Corp. what X Corp. owes Wiwynn for the unused components.

## COUNT I

### (Breach of Contract Against X Corp.)

21.     Wiwynn incorporates by reference and realleges paragraphs 1-20 above of this Complaint as if fully set forth herein.

22.     The Master Purchase Agreement is a valid and binding agreement.

23.     Wiwynn has fully performed all its obligations under the Master Purchase Agreement.

24.     X Corp. breached its agreements with Wiwynn by failing to compensate Wiwynn for the price of the unused components purchased by Wiwynn at the direction of X Corp. for the manufacture of custom products for X Corp.

25.     As a result of X Corp.'s breach, Wiwynn has been damaged in an amount to be proved at trial but in no event less than $61 million, with interest at the legal rate on that amount from the due date of each of the relevant invoices and costs.

## COUNT II

### (Promissory Estoppel Against X Corp.)

26.     Wiwynn incorporates by reference and realleges paragraphs 1-25 above of this Complaint as if fully set forth herein.

27.     In approving the purchase of unused custom and non-custom components by Wiwynn, X Corp. made a clear and unambiguous promise to pay Wiwynn a total of at least $120 million should X Corp. not purchase the custom products for which the components were purchased.

28.     In reliance of X Corp.'s promise of payment, Wiwynn expended resources, including but not limited to purchasing components needed for production of the forecasted custom products.

29.     Wiwynn's reliance on X Corp's promise of payment was not only reasonable, but also entirely foreseeable because that is how Wiwynn conducted its business with X Corp. for nearly eight years.  That is, X Corp. provided forecasts of orders to Wiwynn.  Wiwynn then prepared a list of

custom components needed to produce the forecasted products, and submitted this list to X Corp. for their approval to be purchased by Wiwynn.  Only after Wiwynn received approval from X Corp. would Wiwynn begin purchasing the components.  X Corp. is well-aware of this because X Corp. drafted the Master Purchase Agreement, and explicitly approved Wiwynn's purchase of the custom and approved components.

30.     Because of its reliance on X Corp's promise, Wiwynn has been injured at least in the amount of $61 million with interest at the legal rate on that amount from the due date of each of the relevant invoices and costs.

## COUNT III

### (Breach of the Covenant of Good Faith and Fair Dealing Against X Corp.)

31.     Wiwynn incorporates by reference and realleges paragraphs 1-30 above of this Complaint as if fully set forth herein.

32.     X Corp. failed to work with Wiwynn in good faith for over ten months when it repeatedly refused to communicate with Wiwynn to resolve its outstanding liability, in breach of the implied covenant of good faith and fair dealing.

33.     Without limitation, X Corp. breached the covenant of good faith and fair dealing by failing to:

       a.   place purchase orders with Wiwynn for products Wiwynn purchased to manufacture components for X-Corp., despite X Corp.'s prior approval of Wiwynn's purchase of those components; and

       b.   advise Wiwynn that X Corp. was terminating the Master Purchase Agreement.

34.     X Corp.'s improper objective in so conducting itself was, on information and belief, at all times to delay, and if possible in whole or in part avoid, payment of Wiwynn's legitimate claims.

35.     As a direct and proximate result of X Corp.'s conduct, Wiwynn has suffered, and continues to suffer, damages in an amount to be determined at trial, but no less than an amount in excess of $61 million with interest at the legal rate on that amount from the due date of each of the relevant invoices and costs.

## PRAYER FOR RELIEF

WHEREFORE, Wiwynn respectfully prays for judgment and relief as follows:

A.   The Court award Wiwynn damages in amount to be determined at trial, but no less than $61 million;

B.   The Court award Wiwynn its costs of suit and reasonable attorneys' fees incurred in this action;

C.   The Court award pre-judgment and post-judgment interest on all damages awarded; and

D.   The Court award such other relief as the Court may deem just and proper.

## JURY DEMAND

Wiwynn demands a trial by jury, pursuant to Fed. R. Civ. P. 38, on all claims set forth in the Complaint and all other triable issues.


Dated: August 16, 2024                    Respectfully submitted,

                                          PILLSBURY WINTHROP SHAW PITTMAN LLP


                                          _____*/s/ David J. Tsai*_____
                                          David J. Tsai

                                          Attorneys for Plaintiff
                                          Wiwynn Corporation

4863-0392-6998