1    PILLSBURY WINTHROP SHAW PITTMAN LLP
     DAVID J. TSAI (SBN 244479)
2      david.tsai@pillsburylaw.com
     ALEKZANDIR MORTON (SBN 319241)
3      alekzandir.morton@pillsburylaw.com
     SURUI QU (SBN 332105)
4      surui.qu@pillsburylaw.com
     Four Embarcadero Center, 22nd Floor
5    San Francisco, CA  94111-5998
     Telephone:  415.983.1000
6    Facsimile:  415.983.1200
7

8    Attorneys for Plaintiff
     Wiwynn Corporation
9

10                     UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13   WIWYNN CORPORATION,              Case No. 24-cv-05322-AGT

14                    Plaintiff,     **PLAINTIFF WIWYNN CORPORATION'S**
                                     **OPPOSITION TO X CORP.'S MOTION TO**
15        vs.                        **DISMISS FIRST AMENDED COMPLAINT**

16   X Corp.,                        Hearing Date:  February 7, 2025
                                     Time:  10:00 a.m.
17                    Defendant.     Courtroom A, 15th Floor

18

19

20

21

22

23

24

25

26

27

28

1

2

**TABLE OF CONTENTS**

**Page**

3    I.    INTRODUCTION...................................................................................1

4    II.   FACTUAL BACKGROUND......................................................................2

5    III.  LEGAL STANDARD..............................................................................2

6    IV.   ARGUMENT.........................................................................................3

7          A.    The FAC Sufficiently Pleads A Breach Of Contract Claim.................3

8
               1.    X Corp.'s Failure To Assume Liability For Its Approved Components Is A
9                    Breach Of Express Contractual Terms And Established Course Of Dealing
                     And Course Of Performance. ........................................................3
10
               2.    Course Of Performance And Dealing Also Establish That X Corp. Assumes
11                   Liability For The Approved Components; The Parol Evidence Rule Does Not
12                   Bar Wiwynn's Claims. ................................................................6

13             3.    The FAC Sufficiently Pleads X Corp.'s Wrongful Termination Of The MPA. .......8

14         B.   The FAC Properly And Sufficiently Pleads Promissory Estoppel.....................9

15             1.    Wiwynn May Plead Berach Of Contract And Promissory Estoppel In The
                     Same Complaint. ......................................................................9
16
               2.    Wiwynn Adequately Pleads Clear And Unambiguous Promises Made By X
17                   Corp. ....................................................................................11

18         C.   Wiwynn Is Entitled To Bring A Cause Of Action For Implied Covenant Of Good
19              Faith And Fair Dealing. ..................................................................13

20         D.   The FAC Properly Pleads Misrepresentation Claims...............................14

21             1.    The Economic Loss Rule Does Not Apply To Wiwynn's Claim Of
                     Negligent Misrepresentation. ......................................................14
22
               2.    The Economic Loss Rule Does Not Apply To Wiwynn's Claim Of
23                   Intentional Misrepresentation Based On X Corp.'s Fraudulent Inducement. .........15

24             3.    The FAC Adequately States X Corp.'s Fraud.......................................17

25         E.   Alternatively, Wiwynn Should Be Given Leave To Amend Any Deficiencies In
26              The FAC. ....................................................................................17

27   V.    CONCLUSION......................................................................................18

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Alpha GRP, Inc. v. Subaru of Am., Inc.*,
No. CV182133MWFMRWX, 2018 WL 5986989 (C.D. Cal. June 8, 2018) ..........................11

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
No. 17-CV-03805- LHK, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ........................15, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................2

*ASP Properties Group, L.P. v. Fard, Inc.*,
133 Cal. App. 4th 1257 (2005) .......................................................................................3

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ..........................................................................................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................2

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) .......................................................................................17

*Brown v. Goldstein*,
34 Cal. App. 5th 418 (2019) ...........................................................................................3

*Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*,
2 Cal.4th 342 (Cal. 1992)...............................................................................................13

*Casa Herrera, Inc. v. Beydoun*,
32 Cal. 4th 336 (2004) ....................................................................................................7

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ............................................................................9

*County of Santa Clara v. Atlantic Richfield Co.*,
137 Cal.App.4th 292 (2006) ..........................................................................................16

*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*,
211 Cal. App. 4th 230 (2012) .......................................................................................10

*Ellsworth v. U.S. Bank, N.A.*,
908 F. Supp. 2d 1063 (N. D. Cal. 2012) ........................................................................8

*Finney v. Ford Motor Co.*,
No. 17-cv-06183-JST, 2018 WL 2552266 (N.D. Cal. Jun. 4, 2018).............................15

*Fleet v. Bank of Am. N.A.*,
  229 Cal. App. 4th 1403 (2014) ........................................................................10

*Found. Auto Holdings, LLC v. Weber Motors*,
  No. 121CV00970JLTEPG, 2022 WL 4237720 (E.D. Cal. Sept. 14, 2022) ..........................6

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*,
  109 Cal. App. 4th 944 (2003) ..........................................................................7

*U.S. v. Fuller*,
  531 F.3d 1020 (9th Cir. 2008) ........................................................................4

*Garcia v. World Sav., FSB*,
  183 Cal.App.4th 1031 (2010) .........................................................................11

*Gregorio v. Clorox Co.*,
  No. 17-CV-03824-PJH, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018) ...................................14

*Headlands Rsrv., LLC v. Ctr. For Nat. Lands Mgmt.*,
  523 F. Supp. 2d 1113 (C.D. Cal. 2007) ................................................................8

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ........................................................................6

*Irving v. Ebix Software India Private Ltd.*,
  No. 10-cv-762 JLS BLM, 2011 WL 1375580 (S.D. Cal. Apr. 12, 2011) ...............................7

*J2 Cloud Services, Inc. v. FAX87*,
  No. 13-05353 DDP, 2016 WL 6833904 (C.D. Cal., Nov. 18, 2016) .............................14, 15

*Jackson v. Carey*,
  353 F.3d 750 (9th Cir. 2003) .........................................................................17

*Joffe v. City of Huntington Park*,
  201 Cal. App. 4th 492 (2011), *as modified* (Dec. 2, 2011)....................................11

*Joli Grace, LLC v. Country Visions, Inc.*,
  No. 2:16-1138 WBS EFB, 2016 WL 6996643 (E.D. Cal. Nov. 30, 2016) .............................15

*Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*,
  23 Cal.4th 305 (2000) ................................................................................11

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
  315 F. App'x 603 (9th Cir. 2008) ....................................................................14

*Keskinen v. Edgewell Pers. Care Co.*,
  2018 U.S. Dist. LEXIS 210660 (C.D. Cal. Apr. 17, 2018) ..........................................14

*KST Data, Inc. v. Northrop Grumman Sys. Corp.*,
  No. CV17-5125-MWF (PJWX), 2019 WL 2619638 (C.D. Cal. Apr. 17, 2019).............................7

*Lazar v. Superior Court*,
   12 Cal.4th 631 (1996) ............................................................................16

*Lee v. Federal Street LA LLC*,
   No. 2:14-CV-06264-CAS(sSSx), 2016 WL 2354835 (C.D. Cal., May 3, 2016) ...................15

*Marsu, B.V. v. Walt Disney Co.*,
   185 F.3d 932 (9th Cir. 1999) ....................................................................13

*Mike Nelson Co. v. Hathaway*,
   No. F 05–0208, 2005 WL 2179310 (E.D. Cal. Sept. 8, 2005)..............................10

*Molsbergen v. U.S.*,
   757 F.2d 1016 (9th Cir. 1985) ....................................................................9

*Monaco v. Bear Stearns Residential Mortg. Corp.*,
   554 F. Supp. 2d 1034 (C. D. Cal. 2008) ....................................................8

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
   69 Cal.2d 33 (1968) ....................................................................................7

*Pacific Contours Corp. v. Fives Machining Sys., Inc.*,
   No. SACV 18-00413-DOC, 2018 WL 6204579 (C.D. Cal. Oct. 29, 2018) ...........................15

*Putnam v. Putnam Lovell Grp. NBF Sec., Inc.*,
   No. C 05–1330 CW, 2006 WL 1821207 (N.D. Cal. June 30, 2006) ....................................10

*R. Power Biofuels, LLC v. Chemex LLC*,
   No. 16-CV-00716-LHK, 2017 WL 1164296 (N.D. Cal. Mar. 29, 2017) ...............................15

*Reinhardt v. Gemini Motor Transp.*,
   879 F. Supp. 2d 1138 (E.D. Cal. 2012)........................................................13

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal.4th 979 (2004) ....................................................................14, 15

*Rodman v. Safeway, Inc.*,
   No. C 11-03003 JSW, 2011 WL 5241113 (N.D. Cal. Nov. 1, 2011) ......................................7

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
   732 F. Supp. 2d 952 (N.D. Cal. 2010) ....................................................13

*Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*,
   39 F. Supp. 3d 1103 (C.D. Cal. 2014) ....................................................4

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ....................................................................11

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ....................................................................17

*Thrifty Payless, Inc. v. The Americana at Brand, LLC*,
   218 Cal.App.4th 1230 (Cal. 2013) ..........................................................................13

*Transamerica Ins. Co. v. Sayble*,
   193 Cal. App. 3d 1562 (1987) ...................................................................................3

*TreeFrog Devs., Inc. v. Seidio, Inc.*,
   No. 13CV0158-IEG KSC, 2013 WL 4028096 (S.D. Cal. Aug. 6, 2013) ..................9

*Trunov v. Rusanoff*,
   No. 12–CV–04149 NC, 2012 WL 6115608 (N.D. Cal. Dec. 10, 2012) ..................10

*United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*,
   660 F.Supp.2d 1163 (C.D. Cal. 2009) ....................................................................15

*Virun, Inc. v. Cymbiotika, Inc.*,
   No. 822CV00325SSSDFMX, 2022 WL 17371057 (C.D. Cal. Aug. 18, 2022) .........8

*Vizio Inc. v. Gemtek Tech. Co.*,
   No. SACV13160JLSRNBX, 2014 WL 10538995 (C.D. Cal. Aug. 27, 2014) ......5, 6

*Waitt v. Internet Brands, Inc.*,
   No. CV 10–3006– GHK, 2011 WL 13214104 (C.D. Cal. Jan. 6. 2011) ................15

*Waller v. Truck Ins. Exchange, Inc.*,
   11 Cal.4th 1 (1995) .............................................................................................3, 13

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ....................................................................................2

*Yetter v. Ford Motor Co.*,
   No. 19-CV-00877-LHK, 2019 WL 3254249 (N.D. Cal. Jul. 19, 2019) .................15

Statutes and Codes

California Civil Code
   Section 1638 ..............................................................................................................3

California Code of Civil Procedure
   Section 1856 .........................................................................................................6, 8
   Section 1856(c) ..........................................................................................................7
   Section 1856(g) ..........................................................................................................7

Rules and Regulations

Federal Rules of Civil Procedure
   Rule 8(d)(3) ...............................................................................................................9
   Rule 9(b) ..................................................................................................................17
   Rule 12(b)(6) ............................................................................................................11

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    X Corp.'s motion to dismiss rests on an artificially narrow reading of isolated contract

4    provisions while ignoring both the agreement as a whole and the parties' established course of dealing

5    over eight years.  The motion cherry-picks sections of the Master Purchase Agreement ("MPA") and

6    of various Purchase Orders while disregarding key provisions about custom components, forecasting,

7    and inventory management that formed the backbone of the parties' relationship.  When properly

8    construed in context, the MPA and Product Exhibits create binding obligations regarding custom

9    components that X Corp. attempts to escape through its strained interpretation of select sentences in

10    isolation.

11    At its core, X Corp.'s motion asks this Court to accept the commercially unreasonable

12    proposition that Wiwynn would agree to invest tens of millions of dollars in custom components—

13    components that cannot be resold or repurposed—based on X Corp.'s forecasts and express written

14    approvals, while bearing all risk if X Corp. simply changed its mind.  This defies both basic business

15    logic and the parties' actual course of performance, where X Corp. repeatedly confirmed its

16    assumption of liability for approved components over their eight-year relationship.

17    Most fundamentally, X Corp.'s motion ignores the well-established principle that contract

18    interpretation disputes at the pleading stage must be resolved in the non-moving party's favor where,

19    as here, the contract language is reasonably susceptible to the interpretation advanced in the First

20    Amended Complaint ("FAC").  At minimum, Wiwynn has plausibly alleged an interpretation of the

21    MPA that imposes liability on X Corp. for approved components—an interpretation supported by both

22    the agreement's text and the parties' years of consistent performance.  Whether that interpretation

23    ultimately prevails is a question for summary judgment or trial—not a motion to dismiss.  X Corp.'s

24    motion should therefore be denied because Wiwynn has properly alleged claims for breach of contract,

25    promissory estoppel, breach of implied covenant, and misrepresentation based on X Corp.'s sudden

26    repudiation of its obligations.

27

28

1

## II.    FACTUAL BACKGROUND

2
3
4
5
6
7

For nearly eight years, Wiwynn and X Corp. operated under a carefully structured relationship for producing custom IT infrastructure products.  FAC ¶¶ 1-3.  The parties entered into a Master Purchase Agreement in September 2014, supplemented by Product Exhibits detailing specifications for custom-designed rack solutions.   FAC ¶¶ 12-13.   These products required numerous customized components with significant lead times that had to be procured well in advance of assembly.  FAC ¶ 14.

8
9
10
11
12
13
14
15
16
17

Given the unique nature of these custom components, the parties established clear processes: X Corp. would provide forecasts, Wiwynn would prepare corresponding component lists, and X Corp. would review and approve the lists before Wiwynn proceeded with procurement.   FAC ¶¶ 18-20.   Throughout their relationship, X Corp. repeatedly confirmed that by approving components, it was assuming liability for them.  FAC ¶¶ 18, 25.  The parties followed this process successfully until late 2022, when X Corp. abruptly stopped making payments and refused to accept responsibility for approximately $120 million in components it had approved.  FAC ¶¶ 27-28. Wiwynn continues to incur significant storage and handling expenses for the remaining unused components.  FAC ¶ 31.  As a direct result of X Corp.'s actions, Wiwynn has suffered damages of no less than $61 million.  FAC ¶ 40.

18

## III.    LEGAL STANDARD

19
20
21
22
23
24
25
26
27
28

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).  All of these requirements are met.  As explained in more detail below, X Corp.'s motion fundamentally fails because it ignores

1  the basic legal principle that a party may plead in the alternative when it is not certain how the facts

2  will ultimately develop.

3  **IV.     ARGUMENT**

4          **A.     Wiwynn's FAC Sufficiently Pleads A Breach Of Contract Claim**

5          X Corp.'s attempt to escape liability by focusing solely on Purchase Orders ignores both the

6  MPA's comprehensive framework for custom components and the parties' established course of

7  performance.  When properly construed, the contract and related documents demonstrate X Corp.'s

8  clear obligations regarding approved custom components.

9                  **1.     X Corp.'s Failure To Assume Liability For Its Approved Components Is
                           A Breach Of Express Contractual Terms And Established Course Of
10                          Dealing And Course Of Performance.**

11         Under California law, "[i]nterpretation of a contract must be fair and reasonable, 'not leading

12  to absurd conclusions.'"  *ASP Props. Group, L.P. v. Fard, Inc.*, 133 Cal. App. 4th 1257, 1269 (2005)

13  (quoting *Transamerica Ins. Co. v. Sayble*, 193 Cal. App. 3d 1562, 1566 (1987)); Cal. Civ. Code

14  § 1638.  The court must "look first to the language of the contract in order to ascertain its plain meaning

15  or the meaning a layperson would ordinarily attach to it."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th

16  1, 18 (1995).  "In sum, courts must give a reasonable and commonsense interpretation of a contract

17  consistent with the parties' apparent intent."  *Brown v. Goldstein*, 34 Cal. App. 5th 418, 438 (2019)

18  (internal quotations and citation omitted).  X Corp.'s interpretation of the MPA that it had drafted

19  defies common sense.  X Corp.'s assertion that its forecasts and approvals for procurement of custom

20  components are non-binding, even as they compel Wiwynn to maintain inventory of such components

21  unique to X Corp.'s orders, is a tortured and unreasonable reading of the MPA and should be rejected.

22  *See, e.g.*, Mot. at 20 ("The MPA and Product Exhibits … obligate Wiwynn to acquire sufficient

23  inventory to meet forecasted orders.").  Unlike standard components, custom components are uniquely

24  tailored to X Corp.'s specifications and cannot be easily repurposed or sold on the open market.  It

25  would defy common sense for X Corp. to expect Wiwynn to invest in maintaining inventory for such

26  components without any assumption of liability on X Corp.'s part.

27         X Corp.'s interpretation is also inconsistent with the actual terms of the MPA.  The MPA

28  explicitly provides that forecasts for standard components (*i.e.*, parts that can easily be resold or

1    repurposed) are non-binding.  However, the MPA notably omits any such designation for custom

2    components—items uniquely tailored to X Corp.'s specifications and not easily repurposed or sold

3    elsewhere.  FAC, ¶ 16 (Section 4.3.3 of the MPA did not state that forecasts were not binding on X

4    Corp. as to custom components).  By omitting any such designation for custom components, the parties

5    logically intended a different interpretation for the latter.  *See Rosenthal-Zuckerman v. Epstein, Becker*

6    *& Green Long Term Disability Plan*, 39 F. Supp. 3d 1103, 1107 (C.D. Cal. 2014) (holding that

7    Employee Policy that "is silent as to whether  § 403(b) pension plans contributions constitute AMRE,"

8    but explicitly defines AMRE for other types of persons "demonstrates that when Defendants. . . wanted

9    to include pension plan contributions in the definition of AMRE for a plan beneficiary, they knew how

10   to do it," and thus "Defendants' decisions to not mention pension plan contributions in the definition

11   of employee AMRE shows that the definition of employee AMRE does not include § 403(b) pension

12   plans contributions");  *ee also U.S. v. Fuller*, 531 F.3d 1020, 1027 (9th Cir. 2008) (recognizing the

13   cannon in the context of statutory interpretations, stating "where Congress includes particular language

14   in one section of a statute but omits it in another section of the same Act, it is generally presumed that

15   Congress acts intentionally and purposely in the disparate inclusion or exclusion").

16          If the parties had intended that the forecasts for custom components were also non-binding,

17   the contract would have said so explicitly—just as it stated explicitly for standard components.  The

18   omission demonstrates a deliberate distinction.  Custom components inherently carry greater risks and

19   obligations due to their bespoke nature, and binding forecasts ensure that both parties share these risks

20   and obligations equitably.  Treating custom component forecasts as non-binding, as X Corp. proposes,

21   would render the MPA's differentiated language meaningless, undermining its careful structure and

22   purpose.

23          Finding little support in the text of the MPA, X Corp. instead relies on the delivery risk

24   allocation set forth in the agreement.  Mot. at 9-10.  This reliance is misplaced.  X Corp. conflates two

25   distinct contractual frameworks: the risk allocation terms associated with the delivery of products and

26   the binding effect of forecasts for custom components.  The delivery terms govern liabilities arising

27   from completed transactions, and do not extend to pre-delivery obligations created by forecasts.

28   Forecasting provisions, particularly for custom components, serve a separate purpose: the plan and

1    procurement of inventory based on X Corp.'s anticipated needs.  Custom components are uniquely

2    tailored to X Corp.'s specifications, carrying risks that must be fairly shared.  By claiming forecasts

3    are non-binding while demanding Wiwynn maintain tens of millions of dollars' worth of custom

4    inventory for X Corp., X Corp. seeks to unfairly shift all pre-delivery risks to Wiwynn.

5         X Corp.'s heavy reliance on *Vizio Inc. v. Gemtek Tech. Co.* is similarly misplaced, as that case

6    involved fundamentally different contractual provisions and claims.  In *Vizio*, the supplier argued that

7    sales forecasts themselves constituted binding purchase orders, attempting to convert non-binding

8    estimates into firm commitments to purchase finished products.  *Vizio Inc. v. Gemtek Tech. Co.*,

9    No. SACV13160JLSRNBX, 2014 WL 10538995, at *2-*3 (C.D. Cal. Aug. 27, 2014).  The court

10   rejected this attempt to bypass the contract's detailed purchase order requirements, finding that treating

11   forecasts as purchase orders would render key contractual provisions meaningless.  *Id.*

12        Here, in contrast, Wiwynn makes no such sweeping claim.  Rather than arguing that the

13   forecasts are themselves purchase orders, Wiwynn contends that X Corp. is liable for custom

14   components that Wiwynn specifically identified for X Corp. and awaited X Corp.'s approval before

15   purchasing. FAC, ¶ 18.  As explained above, this narrower theory aligns with the MPA's differentiated

16   treatment of standard versus custom components in Section 4.3.3 and finds support in related

17   provisions of the Product Exhibits[1].  Unlike in *Vizio* where the supplier sought to bypass the contract's

18   purchase order process entirely, Wiwynn's position gives effect to the MPA's specialized provisions

19   regarding custom components while preserving the general purchase order framework for *finished*

20   products.

21        Moreover, at this pleading stage, Wiwynn's reasonable interpretation of the contract terms,

22   particularly when such an interpretation is corroborated by the parties' course of dealing over 8 years,

23   must be accepted as true.  *See* FAC ¶¶ 18-25.  The FAC plausibly alleges that X Corp. consistently

24   confirmed it would assume liability for approved custom components—representations absent from

25   *Vizio*.  FAC ¶ 18.  Even if X Corp. offers a competing interpretation, dismissal is inappropriate where,

26   as here, the contract language is reasonably susceptible to Wiwynn's reading regarding custom

27

28

---

[1] Each Product Exhibit included a detailed listing of all custom components used in the manufacture of each product.

component liability.  Unlike the wholesale rewrite of contractual purchase order provisions rejected in *Vizio*, Wiwynn advances a reasonable construction of specific contract terms governing custom components, supported by years of consistent performance.

Further, separate from the MPA, X Corp. and Wiwynn formed an agreement regarding the purchase of excess components through the parties' email correspondence, in which X Corp. requested Wiwynn to purchase such components and committed in writing to its liability.  FAC, ¶¶ 21-24. Wiwynn sufficiently pleads X Corp.'s liability arising out of these email requests by specifying how X Corp. committed to and breached its obligations.  *See, e.g.*, *Found. Auto Holdings, LLC v. Weber Motors*, No. 121CV00970JLTEPG, 2022 WL 4237720, *4 (E.D. Cal. Sept. 14, 2022) ("a plaintiff who sues on a written contract is not required to attach a copy of the contract to the complaint, but its existence and how it was breached must be identified").  And, *arguendo*, if the Court finds that X Corp.'s agreement with Wiwynn regarding the excess components is ambiguous (which it should not, given X Corp.'s clear commitment to "pay for the excess"), then "it presents a question of fact inappropriate for resolution on a motion to dismiss."  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018).

### 2. Course Of Performance And Dealing Also Establish That X Corp. Assumes Liability For The Approved Components; The Parol Evidence Rule Does Not Bar Wiwynn's Claims.

Regardless of whether X Corp.'s commitments for the approved custom and excess components were express contractual terms, under the facts as pled, the parties' course of performance and dealing establishes that it is part of the agreement between X Corp. and Wiwynn.  FAC, ¶¶ 18-25.

X Corp. misapplies the parol evidence rule by arguing that the MPA's boilerplate integration clause bars Wiwynn's claims.  Mot. at 10-12.  As codified in the Code of Civil Procedure Section 1856, the parol evidence rule is subject to several limitations, including but not limited to:

Subd. (c) – The writing "may be explained or supplemented by course of dealing or usage of trade or by course of performance."

Subd. (g) – The parol evidence rule "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, … or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud."

1    X Corp.'s motion must be denied under these statutory limitations.  First, this Court should consider

2    allegations of extrinsic facts to explain and supplement the MPA, including the parties' course of

3    dealing and course of performance, as well as custom and usage of trade.  Cal. Code Civ. Proc.

4    § 1856(c).  As discussed above, the FAC alleges in detail the parties' course of performance and

5    dealing that clearly establishes that the obligations regarding approved components from which

6    X Corp. is now seeking to flee under its new management.

7        Second, assuming the Court decides at this stage to determine the parties' intent, course of

8    dealing, and course of performance are also relevant for determining whether the terms of the contract

9    are susceptible to more than one interpretation.  Cal. Code Civ. Proc. § 1856(g); *Casa Herrera, Inc. v.*

10   *Beydoun*, 32 Cal. 4th 336, 343 (2004); *KST Data, Inc. v. Northrop Grumman Sys. Corp.*, No. CV17-

11   5125-MWF (PJWX), 2019 WL 2619638, at *5 (C.D. Cal. Apr. 17, 2019).  The "test of admissibility

12   of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the

13   court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a

14   meaning to which the language of the instrument is reasonably susceptible."  *Founding Members of*

15   *the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955

16   (2003).  "The Court can determine whether the contract is ambiguous on its face or by using extrinsic

17   evidence of the parties' intent," and, in the latter case, "the court must provisionally receive all credible

18   evidence concerning the parties' intentions to determine whether the contract language is reasonably

19   susceptible to the interpretation urged by a party."  *Irving v. Ebix Software India Private Ltd.*, No. 10-

20   CV-762-JLS-BLM, 2011 WL 1375580, at *4-*5 (S.D. Cal. Apr. 12, 2011) (quoting *Pac. Gas & Elec.*

21   *Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 37 (1968)).

22       X Corp.'s interpretation of the relevant contract provisions should be rejected for the reasons

23   described above.  But to the extent this Court concludes that the provisions are reasonably susceptible

24   to both X Corp.'s and Wiwynn's respective interpretations, this Court should consider the parties'

25   course of dealing and course of performance.  *See Rodman v. Safeway, Inc.*, No. C 11-03003 JSW,

26   2011 WL 5241113, at *2 (N.D. Cal. Nov. 1, 2011) (on a motion to dismiss, considering extrinsic

27   evidence to resolve a "dispute . . . over the meaning of contract language" because "at a minimum at

28

1  this procedural stage, the Court finds that the language regarding prices in the contract is reasonably

2  susceptible to both parties' interpretations").

3        At minimum, the Court should leave these issues for later decision on summary judgment or

4  at trial, so that Wiwynn may take discovery and present evidence of the parties' intent, as contemplated

5  by Code of Civil Procedure Section 1856. *See Virun, Inc. v. Cymbiotika, Inc.*,

6  No. 822CV00325SSSDFMX, 2022 WL 17371057, at *5 (C.D. Cal. Aug. 18, 2022) ("A court may

7  dismiss a breach of contract claim arising from competing understandings of a contract's terms only

8  where the terms at issue are in fact unambiguous. Where a contract provision is capable of two or

9  more reasonable interpretations, the court should deny the motion to dismiss.") (citing *Ellsworth v.*

10  *U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1084 (N. D. Cal. 2012) and *Monaco v. Bear Stearns Residential*

11  *Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C. D. Cal. 2008)).

12        **3.**    **The FAC Sufficiently Pleads X Corp.'s Wrongful Termination Of The**
             **MPA.**

13

14        X. Corp.'s argument that it did not wrongfully terminate the MPA misunderstands both the

15  nature of Wiwynn's allegations and the applicable pleading standard. The MPA explicitly requires

16  X Corp. to provide "thirty (30) days prior written notice" before terminating the agreement, a provision

17  which X Corp. entirely ignores in its motion to dismiss. FAC ¶ 38; MPA § 11.3. X Corp. provided

18  no such notice before effectively terminating the parties' relationship by ceasing all communications

19  and refusing to honor its obligations. FAC ¶¶ 27-28.

20        The FAC plausibly alleges that X Corp.'s conduct—abruptly stopping all payments, ceasing

21  communications, and refusing to provide any direction regarding components it had approved—

22  constituted a de facto termination of the agreement without the required notice. FAC ¶¶ 27-28, 38.

23  X Corp.'s abrupt termination without notice left Wiwynn with millions in stranded inventory and no

24  opportunity for orderly transition. FAC ¶¶ 28-30. Whether and to what extent earlier notice would

25  have reduced Wiwynn's damages is a factual question for the jury that cannot be resolved on a motion

26  to dismiss.

27        X Corp.'s cramped reading of the termination provision would effectively render the notice

28  requirement meaningless—precisely the type of interpretation courts reject. *Headlands Rsrv., LLC v.*

1    *Ctr. For Nat. Lands Mgmt.*, 523 F. Supp. 2d 1113, 1126 (C.D. Cal. 2007) ("Courts must interpret

2    contractual language in a manner which gives force and effect to *every* provision, and not in a way

3    which renders some clauses nugatory, inoperative, or meaningless."). The 30-day notice requirement

4    exists to provide the non-terminating party time to protect its interests and mitigate potential losses.

5    Accepting X Corp.'s position that it can simply abandon its obligations without consequences would

6    defeat this purpose entirely.

7    At minimum, where the contract explicitly requires notice of termination and Wiwynn has

8    plausibly alleged lack of notice, dismissal of the wrongful termination claim would be premature. The

9    precise timing and circumstances of the termination, as well as what opportunities for mitigation

10   Wiwynn lost due to lack of notice, are factual questions that cannot be resolved on the pleadings.

11   **B.    The FAC Properly And Sufficiently Pleads Promissory Estoppel**

12   Contrary to X Corp.'s arguments, Wiwynn's promissory estoppel claim is both properly pled

13   in the alternative and supported by specific allegations of clear promises and detrimental reliance. The

14   claim provides an independent basis for relief based on X Corp.'s explicit commitments regarding

15   component liability.

16   **1.    Wiwynn May Plead Breach Of Contract And Promissory Estoppel In The
17         Same Complaint.**

18   X Corp. asks the Court to dismiss Wiwynn's promissory estoppel cause of action because the

19   FAC alleges a breach of contract cause of action based on the MPA. Mot. at 14-15. The basic flaw

20   in X Corp.'s argument is that it ignores Wiwynn's right, under California and federal law, to plead in

21   the alternative. Pleading causes of action for breach of contract and promissory estoppel based on

22   similar facts is expressly permitted by the Federal Rules of Civil Procedure, which allow a party to

23   "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3);

24   *see also Molsbergen v. U.S.*, 757 F.2d 1016, 1019 (9th Cir. 1985) (holding that a party may plead

25   inconsistent claims under the Federal Rules of Civil Procedure and that those claims must be analyzed

26   independently). "Even though inconsistent findings of fact may not survive the proof stage,

27   inconsistent claims are explicitly permitted at the pleading stage under Fed. R. Civ. P. 8(d)(3)."

28   *TreeFrog Devs., Inc. v. Seidio, Inc.*, No. 13CV0158-IEG KSC, 2013 WL 4028096, at *8 n.5 (S.D.

1   Cal. Aug. 6, 2013); *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) ("To the

2   extent the district court concluded that the cause of action was nonsensical because it was duplicative

3   of or superfluous to Astiana's other claims, this is not grounds for dismissal."); *Corcoran v. CVS*

4   *Health Corp.,* 169 F. Supp. 3d 970, 989 (N.D. Cal. 2016) (rejecting defendant's argument that the

5   plaintiff could not advance duplicative damages theories because "Rule 8 plainly entitles Plaintiffs to

6   plead a claim in the alternative").

7          California courts have expressly allowed breach of contract and promissory estoppel claims to

8   proceed in tandem at the pleading stage based on this principle.  "Although a cause of action for

9   promissory estoppel is inconsistent with a cause of action for breach of contract based on the same

10  facts, when a pleader is in doubt about what actually occurred or what can be established by the

11  evidence, the modern practice allows that party to plead in the alternative and make inconsistent

12  allegations."  *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1413 (2014) (internal citation,

13  quotation marks, and brackets omitted); *see also, e.g.*, *Putnam v. Putnam Lovell Grp. NBF Sec., Inc.*,

14  No. C 05–1330 CW, 2006 WL 1821207, at *7 (N.D. Cal. June 30, 2006) (denying motion to dismiss

15  breach of implied contract and promissory estoppel claims pleaded in the alternative because

16  "plaintiffs are allowed to plead mutually exclusive claims in the alternative, but are not allowed to

17  'recover on inconsistent theories'") (quoting *Mike Nelson Co. v. Hathaway*, No. F 05–0208 (AWAI),

18  2005 WL 2179310, at *4 (E.D. Cal. Sept. 8, 2005)); *Trunov v. Rusanoff*, No. 12–CV–04149 NC, 2012

19  WL 6115608 (N.D. Cal. Dec. 10, 2012) (denying motion to dismiss promissory estoppel counterclaim

20  pleaded in the alternative to a breach of contract counterclaim because pleading in the alternative was

21  permissible).[2]

22         X Corp. next attacks Wiwynn's promissory estoppel claim by stating that actual consideration

23  was given and that promissory estoppel is not needed, asserting that "Wiwynn's only alleged reliance

24  ('purchasing components needed for production' of X servers) was contractually bargained for."  Mot.

25  at 14-15.  As an initial matter, this position cannot be reconciled with X Corp.'s other (incorrect)

26

27  ───────────────────
    [2] X Corp.'s reliance on an appellate court case distinguishing recovery from breach of contract and
    promissory estoppel claims (Mot. at 14, citing *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc*.,
28  211 Cal. App. 4th 230, 243 (2012)) is misplaced.  *Douglas* is not even applicable at the pleading stage.

arguments that Wiwynn cannot establish that there was an enforceable contractual obligation as to the approved components. Further, here the facts are distinct from the cases that X Corp. relied on. *See* Mot. 14-15 (citing cases refusing to apply the promissory estoppel doctrine based on bargained-for considerations given by plaintiff-promisees). X Corp. has maintained that the contractual obligations as agreed under the MPA are separate from the procurement of the approved components. X Corp. may not legitimately argue that the approvals of components were not binding on X Corp. (*see* Mot. at 2-4, 5-10) but were somehow binding on Wiwynn (*id.* at 15).

### 2.    Wiwynn Adequately Pleads Clear And Unambiguous Promises Made By X Corp.

The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012); *see also Joffe v. City of Huntington Park*, 201 Cal. App. 4th 492, 513 (2011), *as modified* (Dec. 2, 2011). X Corp.'s remaining arguments in its motion only take issue with the first element; that is, whether Wiwynn alleged a clear and unambiguous promise. *See* Mot. at 16-17. The FAC alleges facts that more than meet this requirement.

Although the promise must be "clear and unambiguous in its terms," for it "to be enforceable, it need only be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Alpha GRP, Inc. v. Subaru of Am., Inc.*, No. CV182133MWFMRWX, 2018 WL 5986989, at *11 (C.D. Cal. June 8, 2018) (denying motion to dismiss under Rule 12(b)(6) on promissory estoppel claim). Moreover, a claim for promissory estoppel does not require exchange of true consideration or a binding contract. *Id.* (quoting *Garcia v. World Sav., FSB*, 183 Cal.App.4th 1031, 1040-41 (2010)). Under this doctrine, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Kajima/Ray Wilson v. Los Angeles*

1  *Cnty. Metro. Transp. Auth.*, 23 Cal.4th 305, 310 (2000).  Under the facts as pled, the promises made

2  by X Corp. must survive dismissal at this stage.

3        X Corp. ignores the factual allegations Wiwynn makes in the FAC, and instead substitutes its

4  own view of the facts.  *See* Mot. at 16.  X Corp. simplified its promises made through approving

5  forecasted components as mere preapprovals that confirmed the accuracy of the component lists

6  prepared by Wiwynn.  However, Wiwynn alleges an eight-year relationship where X Corp. knew that

7  when it approved Wiwynn the lists of components prepared based on X Corp.'s forecasts that Wiwynn

8  would order components in reliance on those forecasts and related approvals.  *See* FAC, ¶¶ 18-20.  By

9  giving the approvals, X Corp. explicitly promised that the forecasts were "stable" and not subject to

10  change.  *Id*.  More importantly, as clearly set forth in the FAC, occasionally when X Corp. delayed in

11  approving the procurement, Wiwynn indicated that, without such approval, Wiwynn would not

12  commence the procurement process, and X Corp. subsequently acquiesced in its liability and approved

13  the procurement.  *Id.*, ¶ 20.  During the parties' eight-year relationship, X Corp. always ordered all of

14  the products it included in its approved forecasts.  *Id.*, ¶ 25.  There can be no question that X Corp.

15  understood that Wiwynn would rely on X Corp.'s forecasts and approvals in that manner, and in fact

16  expected Wiwynn to rely on the forecasts and approvals.

17        During the parties' eight-year relationship, the FAC alleges that X Corp. additionally requested

18  and approved procurement of excess components through email correspondence.  *Id.*, ¶¶ 21-24.

19  X Corp. explicitly promised, in writing, that it would "pay for the excess."  *Id.*, ¶ 21.  Regardless of

20  the quantities and number of instances involved, which Wiwynn is entitled to take discovery and

21  present relevant evidence, there is no doubt that these promises are clear and unambiguous.

22        Thus, on the basis of this longstanding, consistent relationship, when X Corp. provided

23  Wiwynn with approvals for its procurement of the custom components based on the forecasts with the

24  expectation that Wiwynn would rely on the approvals to order components, X Corp. promised to place

25  purchase orders for the custom component inventory regarding which it provided forecasts and

26  approvals.  *Id.*, ¶ 45.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    Wiwynn Is Entitled To Bring A Cause Of Action For Implied Covenant Of Good Faith And Fair Dealing.

Wiwynn is entitled to bring both a claim for breach of contract and for implied covenant of good faith and fair dealing.  X Corp.'s motion mischaracterizes the implied covenant claim as seeking to create new obligations rather than protect Wiwynn's right to receive the benefits of its bargain.  The claim is properly grounded in specific contractual provisions, the purpose of which X Corp. has frustrated.

The covenant of good faith and fair dealing is "read into contracts in order to protect the express covenants or promises of the contract and functions as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal.App.4th 1230, 1244 (Cal. 2013).  A "breach of a specific provision of the contract is not a necessary prerequisite" for a party to state a claim for breach of the implied covenant of good faith and fair dealing.  *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal.4th 342, 373 (Cal. 1992); *see also Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1144 (E.D. Cal. 2012) (citing *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999)).

Not only has Wiwynn alleged specific facts supporting breaches of specific provisions of the MPA sufficient to support its claims (FAC, ¶¶ 16-17), it has also plausibly alleged contextual facts that X Corp. has engaged in a course of conduct depriving Wiwynn of the economic benefits it anticipated receiving (*id.*, ¶¶ 14, 18-28, 49-51).  Such allegations, especially when accompanied by the factual detail provided by Wiwynn, are a classic formulation of a breach of the implied covenant claim.

To the extent X Corp. makes any other challenge to the adequacy of Wiwynn's pleading of its claim for breach of the implied covenant, such a challenge fails.  "The elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the

1    benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Reinhardt*, 879

2    F. Supp. 2d at 1145 (citing *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D.

3    Cal. 2010). "In sum, the covenant is implied as a supplement to the express contractual covenants, to

4    prevent a contracting party from engaging in conduct that frustrates the other party's rights to the

5    benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995), as modified on

6    denial of reh'g (Oct. 26, 1995) (citation omitted). Here, Wiwynn adequately pled the elements of its

7    claim. Wiwynn in the FAC alleges the existence of the FAC and the parties' agreement regarding the

8    non-custom excess components reached through email. FAC, ¶¶ 12-26. Wiwynn further alleges that

9    X Corp. frustrated Wiwynn's rights to the benefits by (1) failing to place purchase orders within six

10   months following the forecasts; and (2) refusing to accept liability for the approved custom and excess

11   components. *Id.*, ¶¶ 27-29. X Corp.'s motion should be denied.

12        **D.    The FAC Properly Pleads Misrepresentation Claims**

13        Wiwynn has properly pled its misrepresentation claims. X Corp.'s challenges to these claims

14   ignore the detailed allegations in the FAC regarding specific false statements, including dates,

15   speakers, and content. The claims are neither barred by the economic loss rule nor deficient under

16   heightened pleading standards.

17        **1.    The Economic Loss Rule Does Not Apply To Wiwynn's Claim Of**
              **Negligent Misrepresentation.**
18

19        "California law classifies negligent misrepresentation as a species of fraud for which economic

20   loss is recoverable." *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th

21   Cir. 2008) (citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979 (2004)) (internal

22   citation omitted); *see also Keskinen v. Edgewell Pers. Care Co.*, 2018 U.S. Dist. LEXIS 210660,

23   at *13 (C.D. Cal. Apr. 17, 2018) ("[A]ccording to one Ninth Circuit case, negligent misrepresentation

24   is 'a species of fraud for which economic loss is recoverable.'"). Accordingly, courts have denied

25   analogous motions to dismiss, holding that the economic loss rule does not preclude a claim for

26   negligent misrepresentation. *Gregorio v. Clorox Co.*, No. 17-CV-03824-PJH, 2018 WL 732673, at

27   *5 (N.D. Cal. Feb. 6, 2018) (denying a motion to dismiss negligent misrepresentation claim holding

28   that the economic loss rule does not apply to claims of negligent misrepresentation).

1

2

          **2.**       **The Economic Loss Rule Does Not Apply To Wiwynn's Claim Of Intentional Misrepresentation Based On X Corp.'s Fraudulent Inducement.**

3

    "The economic loss doctrine provides that certain economic losses are properly remediable

4

only in contract and serves to maintain a distinction between damage remedies for breach of contract

5

and for tort." *J2 Cloud Services, Inc. v. FAX87*, No. 13-05353 DDP (AJWx), 2016 WL 6833904, at *4

6

(C.D. Cal., Nov. 18, 2016) (internal quotes omitted).  However, "fraudulent inducement is a well-

7

recognized exception to the economic loss rule." *Lee v. Federal Street LA LLC*, No. 2:14-CV-06264-

8

CAS (sSSx), 2016 WL 2354835, at *8 (C.D. Cal., May 3, 2016) (emphasis added); J2 Cloud Servs.

9

2016 WL 6833904, at *4 ("Having concluded that Plaintiffs plausibly allege they were induced to

10

enter the licensing agreement on the basis of fraudulent statements, the economic loss rule cannot

11

preclude [plaintiff's claim].").

12

    The seminal case on this issue is *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979

13

(2004).  There, the California Supreme Court explained that, when assessing whether to apply the

14

economic loss rule to bar tort damages, "[t]ort damages have been permitted in contract cases where

15

a breach of duty directly causes physical injury . . . ; for breach of the covenant of good faith and fair

16

dealing in insurance contracts . . . ; for wrongful discharge in violation of fundamental public policy;

17

or where the contract was fraudulently induced." *Id.* at 989-90 (emphasis added; internal citations

18

omitted).  The Court further explained that "[i]n each of these cases, the duty that gives rise to the tort

19

liability is either completely independent of the contract or arises from conduct which is both

20

intentional and intended to harm." *Id.* at 990.

21

    Multiple courts within the Ninth Circuit and California have applied *Robinson Helicopter* and

22

held "an adequately pled promissory fraud claim that induces the formation of a contract is sufficient

23

to trigger the fraudulent inducement exception to the economic loss rule." *Arena Rest. & Lounge LLC*

24

*v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805- LHK, 2018 WL 1805516, at *7 (N.D. Cal.

25

Apr. 16, 2018) (emphasis added); *R. Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK,

26

2017 WL 1164296, at *6 (N.D. Cal. Mar. 29, 2017); *Joli Grace, LLC v. Country Visions, Inc.*, No.

27

2:16-1138 WBS EFB, 2016 WL 6996643, at *9 (E.D. Cal. Nov. 30, 2016); J2 Cloud Servs., 2016 WL

28

6833904, at *4; *Pacific Contours Corp. v. Fives Machining Sys., Inc.*, No. SACV 18-00413-DOC

1   (JDEx), 2018 WL 6204579, at *7 (C.D. Cal. Oct. 29, 2018); *Finney v. Ford Motor Co.*, No. 17-cv-

2   06183-JST, 2018 WL 2552266, at *9 (N.D. Cal. Jun. 4, 2018); *United Guar. Mortg. Indem. Co. v.*

3   *Countrywide Financial Corp.*, 660 F.Supp.2d 1163, 1188 (C.D. Cal. 2009); *Waitt v. Internet Brands,*

4   *Inc.*, No. CV 10–3006– GHK (JCGx), 2011 WL 13214104, at *2 (C.D. Cal. Jan. 6. 2011); *Yetter v.*

5   *Ford Motor Co.*, No. 19-CV-00877-LHK, 2019 WL 3254249, at *7 (N.D. Cal. Jul. 19, 2019); *County*

6   *of Santa Clara v. Atlantic Richfield Co.*, 137 Cal.App.4th 292, 329 (2006).

7          *Arena Rest.* is particularly relevant here.  There, this Court explained:

8              Some district courts in this circuit have held that promissory fraud is insufficient if
9              the promise becomes part of an enforceable contract. …  In contrast, other district
               courts have held that an adequately pled promissory fraud claim that induces the
10             formation of a contract is sufficient to trigger the fraudulent inducement exception
               to the economic loss rule. …  This Court follows the latter cases, which more
11             closely follow the California Supreme Court's *Lazar* holding that, if the promise
12             that forms the basis of a promissory fraud cause of action is enforceable as a
               contract, the plaintiff … has a cause of action in tort as an alternative at least, and
13             perhaps in some instances in addition to his cause of action on the contract.  Thus,
               the economic loss doctrine will not bar Plaintiffs' fraud-based claims if Plaintiffs'
14             promissory fraud claim is adequately pled.

15  *Arena Rest.*, 2018 WL 1805516, at *7 (internal citations and quotations omitted).  *Arena Rest.* and

16  similar cases from the Ninth Circuit rely on the California Supreme Court's decision in *Lazar v.*

17  *Superior Court*, which held that "[i]t has long been the rule that where a contract is secured by

18  fraudulent representations, the injured party may elect to affirm the contract and sue for the fraud."

19  12 Cal.4th 631, 645 (1996).

20         Here, at minimum, Wiwynn entered into its agreement with X Corp. to purchase non-custom

21  excess components that X Corp. requested via email, relying on X Corp.'s representations that it would

22  "pay for the excess."  FAC, ¶¶ 21-24, 54.  X Corp. made these representations with the intention of

23  inducing Wiwynn to enter into this agreement.  *Id.*, ¶¶ 55-56.  Wiwynn would not have agreed to but

24  for the representations—the MPA provides that forecasts for non-custom components are not binding.

25  Thus, the extent X Corp. contends that X Corp. intended not to fully assume liability for such excess

26  components, this agreement was the product of fraud.  On at least these facts alone, Wiwynn could

27  pursue a claim for fraudulent inducement or intentional misrepresentation with or without its breach

28  of contract claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    The FAC Adequately States X Corp.'s Fraud.

The misrepresentation claims are based on detailed factual allegations in the FAC, including the allegations that X Corp.'s representative agreed/represented that X Corp.'s demands for the approved components were subject to no change and that X Corp. would accept liability for the procurement.  FAC, ¶¶ 18-26.

Fraud claims are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

The FAC does this.  The fraud causes of action clearly set forth the required element.  The "who, what, when, where, and how" of the misconduct charged are set out in detail in the FAC. Wiwynn identifies the dates, content, and other information (such as the identities of X Corp.'s agents involved in the relevant correspondences) of the misrepresentations made by X Corp., referencing specific exemplary correspondences attached to the FAC.  As such, X Corp. knows exactly the factual basis for the fraud causes of action asserted against it and those causes of action are factually and legally supported by the allegations of the FAC.

### E.    Alternatively, Wiwynn Should Be Given Leave To Amend Any Deficiencies In The FAC

Dismissal without leave to amend is appropriate only when the Court finds that an amendment could not possibly cure deficiencies in the complaint.  *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).  The FAC sufficiently alleged an actionable breach of contract claim, promissory estoppel claim, breach of the implied covenant of good faith and fair dealing claim, intentional misrepresentation claim and negligent misrepresentation claim against X Corp.  But should the Court grant X Corp.'s motion as to any cause of action, Wiwynn respectfully requests that Wiwynn be given leave to amend any such cause of action.

1

**V.     CONCLUSION**

2       For all of the reasons stated herein, Wiwynn respectfully submits that X Corp.'s motion should

3  be denied.  To the extent any aspect of X Corp.'s motion is granted, Wiwynn respectfully submits that

4  it should be granted leave to amend.

5

6  Dated:  December 18, 2024                     Respectfully submitted,

7                                               PILLSBURY WINTHROP SHAW PITTMAN LLP

8
                                                    _*/s/ David J. Tsai*_____
9                                                   David J. Tsai

10                                              Attorneys for Plaintiff
                                                Wiwynn Corporation
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28