SAWYER & LABAR LLP
ADRIAN SAWYER, State Bar No. 203712
 *sawyer@sawyerlabar.com*
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820

GIBBS & BRUNS LLP
David Sheeren *(pro hac vice)*
dsheeren@gibbsbruns.com
Caitlin Halpern *(pro hac vice)*
chalpern@gibbsbruns.com
Mark Doré *(pro hac vice)*
mdore@gibbsbruns.com
Nick Beachy *(pro hac vice)*
nbeachy@gibbsbruns.com
1100 Louisiana St # 5300
Houston, TX 77002
713-650-8805 *(phone)*
713-750-0903 *(fax)*

*Attorneys for Defendant X Corp.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WIWYNN CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>X CORP.,<br><br>　　　　　　Defendant. | Case No. 3:24-cv-05322-AGT<br><br>**DEFENDANT X CORP.'S REPLY IN SUPPORT OF MOTION TO DISMISS WIWYNN'S FIRST AMENDED COMPLAINT**<br><br>Date:　　　February 7, 2025<br>Time:　　　10:00 a.m.<br>Crtrm:　　　A, 15th Floor |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Breach of Contract ............................................................................................... 1

        1. Wiwynn's custom components claim has no basis in the contract. ............... 1

        2. Wiwynn's other claims also ignore the contract entirely. ............................. 5

    B. Promissory Estoppel ............................................................................................ 6

        1. The integrated MPA bars Wiwynn's promissory estoppel claim. ................ 6

        2. Promissory estoppel cannot be pleaded in the alternative here. .................... 7

        3. Wiwynn did not adequately allege clear, unambiguous promises. ............... 9

    C. Breach of the Covenant of Good Faith and Fair Dealing .................................. 10

    D. Intentional and Negligent Misrepresentation .................................................... 11

        1. The integrated MPA defeats Wiwynn's fraud claims. ............................... 11

        2. The economic loss rule bars Wiwynn's misrepresentation claims .............. 12

        3. Wiwynn's allegations fall short of the Rule 9(b) standard. ........................ 13

III. CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Avidity Partners, LLC v. State of California*,
　　221 Cal. App. 4th 1180 (2013) ............................................................................................... 8

*Crystal Springs Upland Sch. v. Fieldturf USA*, Inc.,
　　219 F. Supp. 3d 962 (N.D. Cal. 2016) ................................................................................. 15

*Distance Learning Co., Inc. v. Silly Monkey Studios, LLC*,
　　No. 16-CV-06943-SK, 2017 WL 9613958 (N.D. Cal. Feb. 14, 2017) ............................. 8, 9

*Foster Poultry Farms v. Alkar–Rapidpak–MP Equip., Inc.*,
　　868 F. Supp. 2d 983 (E.D. Cal. 2012) .................................................................................. 14

*Guz v. Bechtel Nat'l Inc.*,
　　24 Cal.4th 317 (2000) ........................................................................................................... 12

*Horne v. Harley-Davidson, Inc.*,
　　660 F. Supp. 2d 1152 (C.D. Cal. 2009) ....................................................................... 7, 9, 10

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
　　880 F. Supp. 2d 1029 (N.D. Cal. 2012) ....................................................................... 7, 9, 14

*KST Data, Inc. v. Northrop Grumman Sys. Corp.*,
　　2017 WL 10519638 (C.D. Cal. Nov. 16, 2017) .................................................................. 7, 9

*Leids v. Metlife Home Loans*,
　　2009 WL 4894991 (C.D. Cal. Dec. 7, 2009) ......................................................................... 7

*Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*,
　　2007 WL 2492436 (E.D. Cal. Aug. 30, 2007) .................................................................... 14

*Putnam v. Putnam Lovell Grp. NBF Sec., Inc.*,
　　No. C 05–1330 CW, 2006 WL 1821207 (N.D. Cal. June 30, 2006) ................................. 10

*Robinson Helicopter Co. v. Dana Corp.*,
　　34 Cal. 4th 979 (2004) .......................................................................................................... 14

*Soil Retention Products, Inc. v. Brentwood Indus.*, Inc.,
　　521 F. Supp. 3d 929 (S.D. Cal. 2021) ................................................................................. 15

*Trunov v. Rusanoff*,
　　No. 12-CV-04149 NC, 2012 WL 6115608, at *3 (N.D. Cal. Dec. 10, 2012) ..................... 10

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
　　117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................................... 15

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
　　660 F. Supp. 2d 1163 (C.D. Cal. 2009) ............................................................................... 14

*Vavak v. Abbott Laboratories, Inc.*,
     SACV 10–1995 JVS RZX, 2011 WL 10550065 (C.D. Cal. June 17, 2011) ...................... 15

*Vizio Inc. v. Gemtek Tech Co.*,
     2014 WL 10538995 (C.D. Cal. Aug. 27, 2014) ......................................................... 4, 5, 11

*Walker v. KFC Corp.*,
     728 F.2d 1215 (9th Cir. 1984) .................................................................................... 10

*Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP*,
     No. 15-CV-05789-JST, 2016 WL 1394360  (N.D. Cal. Apr. 8, 2016) ............................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Wiwynn's core claim is simple. Wiwynn alleges that X owes it money for computer components that X never purchased, under a comprehensive contract that fully spells out X's obligations. But since the contract does not say what Wiwynn wants it to say, Wiwynn tries to locate liability somewhere else. When two sophisticated companies enter into a fully integrated master agreement, however, blackletter law dictates that their relationship is governed by that written contract and that contract alone. None of Wiwynn's amorphous allegations about extrinsic understandings and unstated agreements can change the parties' written contract. Wiwynn fails to state a claim because its causes of action contradict the clear terms of the parties' agreement.

## II.   ARGUMENT

### A.   Breach of Contract

#### 1.   *Wiwynn's custom components claim has no basis in the contract.*

Wiwynn's central contractual theory is that X breached the MPA by "fail[ing] to properly compensate Wiwynn for the price of the unused components purchased by Wiwynn." First Am. Compl. ("**FAC**") (ECF No. 26) ¶ 37. The only provision that Wiwynn cites in support of this claim is MPA Section 4.3.3, which says:

> Forecast. Forecast provided by [X] for [Wiwynn's] standard Components are non-binding. For non-standard Components (any Components that are customized per [X]'s request), [X] anticipates providing [Wiwynn] with a six-month rolling forecast.

Master Purchase Agreement ("**MPA**") (ECF No. 26-3) § 4.3.3. On its face, Section 4.3.3 does not require X to reimburse Wiwynn for unused components. But Wiwynn argues X is bound by six-month rolling forecasts for non-standard components by "negative implication" because the MPA does "*not state* that forecasts were *not binding*." FAC ¶ 16 (emphasis added).

There is no need for this kind of grammatical guesswork, because the Product Exhibits incorporated into the MPA make the answer clear. The MPA states that X anticipates providing a

"six-month rolling forecast" for non-standard components—and the Product Exhibits confirm that six-month rolling forecasts for non-standard components[1] are "**non-binding**." *See* FAC Ex. B ("**Product Exhibits**") at 10; 62; 106; 169 ("[X] shall provide [Wiwynn] with a rolling ***non-binding six (6) month forecast*** ... subject to Section 4.3.3 of the MPA.") (emphasis added). The Product Exhibits are not only incorporated into the contract but also control over the MPA in the event of conflict. *See* X's Mot. to Dismiss FAC ("**MTD**") (ECF No. 37) at 8. Wiwynn admits that the Product Exhibits bind the parties, s*ee* FAC ¶¶ 18; 34, yet its Response makes no mention of this dispositive language from the Product Exhibits. Wiwynn is silent on the point because it has no response.

The contract provides a simple four-step process for X to purchase servers from Wiwynn:

1. **Forecast.**
   *X tells Wiwynn how many servers it expects, at the time of the forecast, to order in the future.*

2. **Procurement.**
   *Wiwynn provides the list of components needed to build the servers.*

3. **Purchase Order.**
   *X "may" issue a formal Purchase Order if its needs remain consistent.*

4. **Delivery.**
   *Wiwynn assembles and delivers the servers.*

The question is, when does Wiwynn become entitled to payment for custom components? Whatever the answer is, it must come from an express contractual term. The MPA makes clear that X "will not reimburse [Wiwynn] for any expenses" unless the contract says so. MPA § 2.4. The MPA and Product Exhibits constitute "the complete and exclusive understanding and agreement of the parties," and any change must be "in writing and signed by the parties." MPA § 14.13.

---

[1] *See* MPA § 4.3.4 ("A list of non-standard, custom components for each Product is set forth in the individual Product Exhibits.").

The MPA and Product Exhibits address all four steps of the purchasing process:

| | |
|---|---|
| **(1) Forecast**<br>*No Payment* | "[X] shall provide [Wiwynn] with a rolling non-binding six (6) month forecast … subject to Section 4.3.3 of the MPA." Product Exhibits at 10; 62; 106; 169. |
| **(2) Procurement**<br>*No Payment* | Wiwynn "*will maintain* an inventory of raw materials and components necessary to manufacture products *in accordance with the forecasts*." *E.g.*, *id.* at 10 (emphasis added). |
| | "Prior to placing orders with the vendors to meet [X's] forecast, [Wiwynn] shall provide [X] with LLK (Long Leadtime Kit) for the long lead time components." *E.g., id.* at 107. |
| | Wiwynn "will trigger material demand based on material lead-time, [X] project target schedule, manufacturing process and material screening and preparation…. Supplier routinely purchases products and holds inventory *to cater to [X] demand*…." *E.g.*, *id.* at 56–57 (emphasis added). |
| **(3) Purchase Order**<br>*Partial Payment for Unsellable Materials* | "During the term hereof, [X] *may* issue Purchase Orders for the product(s) at the prices set forth in the Pricing Appendix to the Product Exhibit." *E.g.*, *id.* at 21 (emphasis added). |
| | "[X] reserves the right to cancel Purchase Orders for standard and custom manufactured Products. For custom manufactured Products [X] will negotiate in good faith with [Wiwynn] for the disposition of materials that [Wiwynn] cannot otherwise sell on the open market, and shall be liable for any and all remaining materials that [Wiwynn] is unable to sell on the open market." MPA § 4.3.4. |
| **(4) Delivery**<br>*Full Payment* | "For Products delivered by [Wiwynn] and accepted by [X], [X] will pay [Wiwynn] the price specified in the applicable Purchase Order(s)." *Id.* § 2.1. |
| | "[X] will pay Supplier undisputed fees in accordance with the terms set forth in this Agreement. … Unless otherwise specified in this Agreement, [X] will not reimburse Supplier for any expenses incurred by Supplier in connection with its obligations. … [X] will pay each invoice, referencing [X's] Purchase Order, … within [45] days following receipt of Product." *Id.* § 2.4. |

At Step 1, the Product Exhibits makes clear that all forecasts for the components at issue are "non-binding," conclusively rejecting Wiwynn's strained interpretation of MPA § 4.3.3. At Step 2, the Product Exhibits simply state that Wiwynn must "provide" component lists—with no mention of X assuming liability. Not until Step 3, after X issues a Purchase Order, does Wiwynn become entitled to any payment. If X issues and then *cancels* a Purchase Order, X must pay for "remaining materials" that Wiwynn "is unable to sell on the open market." MPA § 4.3.4.[2] Full payment is reserved for Step 4, after Wiwynn has delivered the final product. *Id.* § 2.1.

---

[2] There is no allegation that X issued a Purchase Order related to any disputed components. Wiwynn complains that X "frustrated Wiwynn's rights" by "*failing* to place purchase orders." Wiwynn's Resp. to MTD ("**Resp.**") (ECF No. 43) at 14.

Wiwynn would have the Court throw out these negotiated procedures and replace them with a new agreement of Wiwynn's own creation, because in hindsight it does not like the bargain it struck. In Wiwynn's new version, forecasts expressly made "non-binding" in the Product Exhibits become binding, Purchase Orders become pointless formalities, and *Wiwynn's* promises to "provide" component lists somehow become *X's* promises of payment. This argument has no basis in the contract and cannot give rise to a claim.

In line with the rest of its Response, Wiwynn does not address the myriad problems with its theory. In its motion to dismiss, X not only cited the language of the Product Exhibits providing that forecasts are non-binding; it also pointed out that if forecasts *were* binding, numerous contractual provisions would be meaningless. MTD at 8 (citing MPA §§ 4.3.4, 11.3, 11.4.1). X also demonstrated—with references to the MPA, the Product Exhibits, and ample legal authority—that the duty to source components in advance and the pre-delivery risk of loss for those components rested with Wiwynn. *Id.* at 8–12.[3] Not least, X showed that Wiwynn's purported course of performance would both *contradict* the express terms of the MPA and *add* brand-new terms to the contract—neither of which is permissible. *Id.* at 11–13. Rather than addressing these arguments head-on, Wiwynn merely rehashes its one-note theory of MPA Section 4.3.3 and appeals to a nonsensical version of "common sense" that disregards the actual contractual terms.

Instead of supporting its theory, Wiwynn feebly tries to distinguish the damning *Vizio* case. *See* MTD at 8–9; 13 (citing *Vizio Inc. v. Gemtek Tech Co.*, 2014 WL 10538995 (C.D. Cal. Aug. 27, 2014)). Wiwynn argues that Gemtek sought payment for leftover *finished products* (never ordered or delivered), while Wiwynn's claims are based only on leftover *components* (parts purchased by the supplier based on the forecasts). In fact, Gemtek sought both. *See Vizio*, 2014 WL 10538995, at

---

[3] More specifically, X contended that the risk of loss was Wiwynn's, subject to the limited carveout of Section 4.3.4, which puts some risk with X in the event Purchase Orders are placed and then cancelled. MTD at 10. That carveout cannot be squared with Wiwynn's theory. Yet even after X's motion expressly chided Wiwynn for ignoring Section 4.3.4, Wiwynn's Response *ignored it again*. That provision is not cited even once.

*2–4. Resp. at 5. As to "finished but unshipped" products, the *Vizio* court found that "the parties' course of performance" could not "overcome the plain meaning of the Supply Agreement," which required purchase orders. *Id.* at *2–3. As to "leftover components," the dispute turned on a provision like MPA Section 4.3.4, which made the buyer liable for certain components *if and only if* it issued a purchase order.[4] Once again, the court enforced the contract's plain text and rejected a conflicting course of performance argument. *Vizio*, 2014 WL 10538995, at *4 ("The Supply Agreement does not permit Gemtek's recovery for leftover components except where Vizio submitted a purchase order for items for which the components were purchased."). As Wiwynn concedes, courts should reject attempts to "bypass the contract's detailed purchase order requirements" because "treating forecasts as purchase orders would render key contractual provisions meaningless." Resp. at 5.

Even on Wiwynn's suspect framing, the clear and simple *Vizio* analysis applies all the same: Payment requires Purchase Orders, X did not issue Purchase Orders, so X has no duty to pay. No purported course of performance can change that result because the MPA only allows modification by a signed writing. MPA § 14.13.

### 2. Wiwynn's other claims also ignore the contract entirely.

With Wiwynn's central contractual theory out of the way, Wiwynn's remaining arguments are easily disposed of. In light of the unambiguous contract, none of Wiwynn's allegations about "course of performance and dealing," "extrinsic facts to explain and supplement the MPA," "evidence of the parties' intent," "email correspondence," or "expectation[s]" carry any weight. *See* Resp. at 6; 7; 12.

Among these arguments is the brand-new claim that the parties "formed an agreement" that was somehow "separate from the MPA." *Id.* at 6. This unpled allegation only involves the emails attached as Exhibit D to the FAC, which concern an isolated instance where X and Wiwynn

---

[4] *Compare Vizio* at *4 (contract provides that the buyer can be liable for "Unique Components" that were "ordered by [Vizio] based on a purchase order" and that "cannot be returned or cannot be utilized" for other customers' products) *with* MPA § 4.3.4 (addressing liability for materials that Wiwynn "cannot otherwise sell on the open market" after cancellation of a purchase order).

discussed buying an excess of certain *standard* components as a way around a particular supply-chain logjam. Neither the Exhibit D emails, nor any alleged contract created by them, have *anything* to do with forecasts or custom components. *See* MTD at 4 n.5; 13 n.14 (explaining the distinction between the Exhibit C and Exhibit D emails). Had Wiwynn pleaded it, this claim would be easily dispatched: A freestanding contract arising from the Exhibit D emails cannot be reconciled with the MPA's status as a binding master agreement. *See* MPA § 14.13 ("Any waiver, modification or amendment of any provision of this Agreement will be effective only if in writing and signed by the parties hereto."). Even if such a contract could have been formed, it would be limited to the standard components identified in the Exhibit D emails, not the custom components at the center of the parties' dispute. *See* MTD at 17.

Only one of Wiwynn's other arguments bears any relation to the MPA itself. Wiwynn argues that it has pleaded a breach of contract claim for wrongful termination of the agreement. But as Wiwynn's Response makes clear, Wiwynn does not allege that X *actually terminated* the MPA with less than 30 days' notice. Rather, Wiwynn alleges that X "effectively terminated" the agreement by "refusing to honor its obligations." *See* Resp. at 8; MPA § 11.3. This "effective termination" theory does not appear on the face of the complaint, *see* FAC ¶ 38, but even if it did, the argument is entirely circular. The allegation is that X terminated the MPA by breaching the MPA—but this assumes that X breached the MPA in the first place. It did not.

### B.     Promissory Estoppel

#### 1.     *The integrated MPA bars Wiwynn's promissory estoppel claim.*

Wiwynn's claims and the MPA concern the same subject matter: sales of servers by Wiwynn to X. As noted above, the fully integrated MPA is the "complete and exclusive understanding" of the parties as to that "subject matter." MPA § 14.13. Thus, Wiwynn cannot state a claim for promissory estoppel "because a valid contract, supported by consideration, governs the same subject matter as the alleged promise." *KST Data, Inc. v. Northrop Grumman Sys. Corp.*, 2017 WL

10519638, at *4 (C.D. Cal. Nov. 16, 2017) (quoting *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009)); *see also* MTD at 14–15.

For one thing, the "purpose of the doctrine of promissory estoppel is to permit a court of equity to excuse the absence of consideration for an otherwise enforceable promise." *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1041 (N.D. Cal. 2012). But here, as in *JMP*, the "claim for promissory estoppel must fail because no party disputes that the promises at issue here were supported by consideration." *See id.* Thus, "there is no need to provide a substitute for consideration," making Wiwynn's promissory estoppel claim "superfluous." *Leids v. Metlife Home Loans*, 2009 WL 4894991, at *6 (C.D. Cal. Dec. 7, 2009).

The MPA also prevents Wiwynn from adequately alleging reliance. Wiwynn allegedly relied on X's promise by buying components that would be used to fill X's potential Purchase Orders. The MPA *already required* as much. *See* MTD at 14–15; MPA §§ 2.2; 2.4. Where the acts in reliance are the same as those taken to fulfill preexisting duties under the contract, there can be no claim for promissory estoppel. *See Avidity Partners, LLC v. State of California*, 221 Cal. App. 4th 1180, 1208–09 (2013).[5]

### 2. Promissory estoppel cannot be pleaded in the alternative here.

Rather than engage with these arguments, Wiwynn claims it can plead promissory estoppel and breach of contract as alternative theories. Resp. at 9–10. That is true in some cases, but not here.

"California courts have made clear that contract claims and promissory estoppel claims are mutually exclusive and that courts can dismiss a cause of action for promissory estoppel even at the pleading stage." *Distance Learning Co., Inc. v. Silly Monkey Studios, LLC*, No. 16-CV-06943-SK, 2017 WL 9613958, at *2 (N.D. Cal. Feb. 14, 2017). When the scope or existence or validity of a

---

[5] Wiwynn has no answer to this point, arguing only that X has somehow contradicted itself. Resp. at 10–11. There is no such conflict. X argues that X had no duty to pay for the components at issue, defeating Wiwynn's contract claim. And X also argues that Wiwynn *did* have a duty to maintain an inventory of the components, preventing Wiwynn from establishing reliance as required for its promissory estoppel claim.

contract is in question, alternative pleading may be allowed; but if an undisputedly binding contract governs the subject matter of the promissory estoppel claim, only the contract claim may proceed.

The *KST Data* case explains the distinction well:

> Here, KST may not plead the claim for promissory estoppel in the alternative to the claim for breach of contract because there is no such "alternative" in which to plead: There is no dispute regarding the existence of a contract—merely whether Northrup has breached contract as KST alleges. …
>
> The cases KST cites for the proposition that California courts have expressly allowed breach of contract and promissory estoppel claims to proceed together at the pleading stage are inapposite because those cases involved disputes about whether a valid contract had been formed. …
>
> KST argues that pleading breach of contract and promissory estoppel in the alternative is permitted in this case because "there is 'doubt about what actually occurred or what can be established by the evidence.'" (Opp. at 7 (quoting [*Fleet v. Bank of America N.A.*, 229 Cal. App. 4th 1403, 1413 (2014)]). There may be doubt about exactly what occurred or what the evidence will establish in this action, but there is no doubt about the existence of a valid contract supported by consideration that governs the same subject matter as the alleged promise.

*KST Data, Inc.*, 2017 WL 10519638, at *4–5 (citations omitted).

Where the parties agree there is a valid contract governing the subject matter of the dispute, courts routinely dismiss promissory estoppel claims under Rule 12(b)(6) with prejudice and without leave to amend. *See, e.g.*, *id*; *JMP*, 880 F. Supp. 2d at 1042; *Horne*, 660 F. Supp. 2d at 1163; *Distance Learning Co.*, 2017 WL 9613958, at *2. Every case Wiwynn cites, including the *Fleet* case, involves a dispute over whether a contract had been formed—the exception described in the *KST* excerpt above and inapplicable here. *See* Resp. at 10.[6]

---

[6] The other two cases Wiwynn cites fit the same mold. At issue in *Trunov v. Rusanoff* was an alleged *oral* contract, the existence and terms of which were hotly disputed. No. 12-CV-04149 NC, 2012 WL 6115608, at *3 (N.D. Cal. Dec. 10, 2012). Finally, in *Putnam v. Putnam Lovell Grp. NBF Sec., Inc.*, the original complaint alleged a breach of contract claim that was barred by the terms of the written contract. No. C 05–1330 CW, 2006 WL 1821207, at *7 (N.D. Cal. June 30, 2006). The plaintiff's amended complaint then alleged that the defendants "either agreed or promised to replace and supercede the portions" of the written contract related to the claims at hand. *Id.* The *Putnam* case did not permit a promissory estoppel claim to proceed despite a fully executed, written contract—it merely allowed an allegation that such contract was *replaced*, meaning the contract was in dispute and thus alternative claims were allowed.

"In sum, either [X] was in breach of contract or it was not." *Horne*, 660 F. Supp. 2d at 1163 (quoting *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984)). "Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract." *Id.*

### 3. *Wiwynn did not adequately allege clear, unambiguous promises.*

The promissory estoppel claim fares no better on the merits. The FAC does not allege the necessary clear and unambiguous promises by X to pay for the components at issue. *See* MTD at 16–17. Unable to address this fatal flaw as to one essential element (adequate promises), Wiwynn offers an irrelevant tangent about an entirely separate element (reliance). Resp. at 11–12 (claiming that X knew its component-list approvals would lead to Wiwynn purchasing components). Wiwynn tries to obscure the issue further by blurring the distinction between *custom* component lists (the Exhibit C emails) and a one-off discussion about a supply crunch for *standard* components (the Exhibit D emails).

As to the forecasted custom components at issue in the Exhibit C emails, the Response's *only* attempt to identify a promise is this: "By giving the approvals, X Corp. explicitly promised that the forecasts were 'stable' and not subject to change." Resp. at 12. That does not cut it. A statement "that the forecasts were 'stable'" is *not* a promise to pay for components, much less a promise to pay for components that were never used. The promises Wiwynn needs to avoid dismissal simply aren't there.

Wiwynn also sneaks in a new theory that X "promised *to place purchase orders* for the custom component inventory regarding which it provided forecasts and approvals." Resp. at 12 (citing FAC ¶ 45) (emphasis added). But there is no such allegation in the FAC—not in the cited paragraph or anywhere else. This shoehorned theory would fail even if pleaded, however. Claims for promissory estoppel will lie only where no valid contract governs the subject matter at issue, *see supra* § II(B)(2), yet Wiwynn's claim paradoxically relies on X's alleged failure to perform a function created by, and that makes sense only in the context of, the MPA. Moreover, Wiwynn's

premise is that because X allegedly "always ordered all of the products it included in its approved forecasts," simply issuing a forecast constituted a promise to order all the included products. *See* Resp. at 12. Not so. Even assuming for this motion that the premise is true, the four-step process for ordering products plainly gave X the *option* to order less or more or none of the forecasted products. *See supra* § II(A)(1). The MPA never requires X to issue a Purchase Order; X could always choose not to. Deciding not to exercise that option cannot convert it into a binding obligation.[7]

Finally, Exhibit D is the exception that proves the rule. At the absolute maximum, Wiwynn has alleged a *single* relevant promise: namely, the statement in the Exhibit D emails in which an X employee allegedly promises that X will "pay for the excess" of particular **standard** parts. Resp. at 12. This only puts in relief that no such promise is alleged with respect to the **non-standard** parts in the component lists that make up virtually all of Wiwynn's claim. Even if the MPA did not totally preclude the promissory estoppel claim, therefore, it could survive *only* as to the single alleged promise in Exhibit D. Wiwynn wrongly states that it "is entitled to take discovery" as to whether other, similar promises were allegedly made. For that to be true, Wiwynn must first *at least have alleged* that such similar promises were made. It does not. Moreover, Wiwynn has no need for "discovery" into that topic: if X made a promise to Wiwynn, Wiwynn itself would have a record of it. Wiwynn cannot assert a promissory estoppel claim for a purported promise it does not even know about and therefore could not have relied upon. Wiwynn's promissory estoppel claim must be dismissed except to the extent it alleges *actual* promises to pay for components.

C.    **Breach of the Covenant of Good Faith and Fair Dealing**

Wiwynn scarcely tries to salvage its good faith and fair dealing claim. X cited four cases exemplifying the routine dismissal of implied-covenant claims that, like Wiwynn's here, failed to

---

[7] *See supra* § II(A)(1) (course of performance cannot conflict or add to the integrated MPA, nor can it modify the contract terms without a signed writing); *cf.* MPA § 14.12 (any waiver by the parties will not constitute a subsequent waiver of the same or other provision(s)); *Vizio*, 2014 WL 10538995, at *2 (supplier arguing successfully "that under the Supply Agreement, it is obligated to purchase manufactured products only if it submitted a purchase order, and that while it has the option of purchasing leftover products, it is not obligated to do so").

allege the specific contractual provision(s) the defendant allegedly frustrated. MTD at 18. Wiwynn cites no contrary authority. Instead, it merely points to its allegation (rebutted above) that forecasts are binding on X under Section 4.3.3. Resp. at 13 (citing FAC ¶¶ 16–17). Moreover, Wiwynn alleges only that X breached a duty to pay for forecasted components under MPA Section 4.3.3; there is no allegation that X's conduct frustrated Wiwynn's performance of, or rights under, a particular provision of the MPA. "[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous." *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 327 (2000).

What Wiwynn *actually* alleged was that the MPA implied a covenant that "X Corp. would act in good faith and deal fairly with Wiwynn, that X Corp. would do nothing to interfere with Wiwynn's interests and commitments, and that X Corp. would give at least the same level of consideration to the interests of Wiwynn as X Corp. would give its own interests." FAC ¶ 49. Wiwynn then alleged, as the basis of this claim, that "X Corp. breached ***this*** implied good faith and fair dealing." *Id.* ¶ 50. Wiwynn cannot wriggle free of its own allegations. Not only does Wiwynn fail to ground its implied covenant claim in a particular MPA provision, it also seeks to create *new* duties not found in the integrated MPA. MTD at 19. Its improper use of the implied covenant must be dismissed.

### D. Intentional and Negligent Misrepresentation

#### 1. *The integrated MPA defeats Wiwynn's fraud claims.*

Disposing of the misrepresentation claims is simple, as Wiwynn's Response bafflingly ignores X's lead argument altogether. Supported by ample caselaw precluding fraud claims that conflict with the language of an integrated contract, X contended that the MPA is incompatible with the notion that X's non-binding forecasts somehow became binding when X simply "approved" Wiwynn's corresponding component lists, based on the provisions cited above. MTD at 20; *supra* § II(A)(1). Wiwynn left that argument and straightforward authority unrebutted, which alone warrants dismissal.

### 2. The economic loss rule bars Wiwynn's misrepresentation claims.

Wiwynn focuses instead on the economic loss rule. It argues that the cited doctrine excludes (1) negligent misrepresentation claims entirely as well as (2) intentional misrepresentation claims that are based on fraudulent inducement to contract. Resp. at 14–16. Neither saves its claims.

*First*, Wiwynn relies on the irrelevant notion that economic loss may be a type of damages recoverable through negligent misrepresentation claims. Resp. at 14. This misses the point. The question is not whether Wiwynn's tort claim seeks the wrong kind of damages (for economic loss rather than for harm to person or property). The problem is instead that Wiwynn's misrepresentation claims merely allege that X violated Wiwynn's bargained-for expectations under the MPA. *See* MTD at 20–21.

At bottom, the "economic loss rule [] bars a party from bringing tort claims in a breach of contract action for pure economic loss" unless it "can demonstrate harm above and beyond a broken contractual promise." *Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP*, No. 15-CV-05789-JST, 2016 WL 1394360, at *5 (N.D. Cal. Apr. 8, 2016) (dismissing negligent misrepresentation claim on these grounds and quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)); *see also* MTD at 21. X's motion cited two cases dismissing negligent misrepresentation claims under the basic principle that contract claims cannot be restated as sounding in tort. *Id.* (citing *JMP*, 880 F. Supp. 2d at 1044, and *Foster Poultry Farms v. Alkar–Rapidpak–MP Equip., Inc.*, 868 F. Supp. 2d 983, 993–94 (E.D. Cal. 2012)). There are plenty more. *See, e.g.*, *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1184 (C.D. Cal. 2009) (dismissing negligent misrepresentation claim because "the alleged misrepresentations are not conceptually distinct from the contract"); *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, 2007 WL 2492436 (E.D. Cal. Aug. 30, 2007) (same; "[t]he allegations made with regard to the breach of contract claim closely parallel those made with regard to the negligence and negligent misrepresentation claims"); *Vavak v. Abbott Laboratories, Inc.*, SACV 10–1995 JVS RZX, 2011 WL 10550065 (C.D. Cal. June

17, 2011).[8] By contrast, none of Wiwynn's cases involve contract claims, so they have nothing to say about the relationship between contract claims and tort claims. *See* Resp. at 14.

*Second*, Wiwynn's other point of law—that fraudulent inducement to enter a contract can be an exception to the economic loss rule—is equally irrelevant to the claims as pleaded. Resp. at 15–16. Here again, Wiwynn tries to bring in a brand-new claim that the Exhibit D emails concerning one-off standard components somehow formed a freestanding contract separate from the MPA. *Id.* at 16 ("Wiwynn entered into its agreement with X Corp. to purchase non-custom excess components that X Corp. requested via email, relying on X Corp.'s representations that it would 'pay for the excess.'"). As discussed above, this novel claim is absent from the FAC and bears no relation to the contract claims Wiwynn actually alleged. And again, even if pleaded, this independent contract would be precluded by the MPA's Section 14.13.

### 3. *Wiwynn's allegations fall short of the Rule 9(b) standard.*

Last, Wiwynn's pleading falls short of Rule 9(b)'s heightened requirements in several ways. First, as X pointed out in its motion to dismiss, Wiwynn has not alleged scienter at all—to which Wiwynn has no argument in response. MTD at 23. Second, X argued that Wiwynn inadequately pleaded the essential element of reliance, given that Wiwynn's alleged acts of reliance (buying components to meet X's forecasted demand) were already required by the MPA. *Id.* Wiwynn fails to rebut this same point with respect to the promissory estoppel claim, *see supra* § II(B), and does not even try with respect to the misrepresentation claims. Third, Wiwynn has failed to plead the

---

[8] *See also, e.g., Crystal Springs Upland Sch. v. Fieldturf USA*, Inc., 219 F. Supp. 3d 962, 970 (N.D. Cal. 2016); *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1105 (C.D. Cal. 2015); *Soil Retention Products, Inc. v. Brentwood Indus.*, Inc., 521 F. Supp. 3d 929, 956 (S.D. Cal. 2021).

"who, what, when, where, and how" of the alleged misrepresentations.[9] Wiwynn's half-baked misrepresentation claims do not survive Rule 9(b) scrutiny.

## III. CONCLUSION

X respectfully requests that Wiwynn's First Amended Complaint be dismissed with prejudice.

---

[9] Wiwynn responds by citing Paragraphs 18–26 of the FAC. Resp. at 17. To the extent the Court deems those paragraphs to allege actionable misrepresentations (they do not, and the claims should be dismissed for the reasons discussed above in any event), Wiwynn's claims must at a minimum be narrowed to those pleaded allegations alone. It is elementary that Wiwynn cannot proceed on broad-brush misrepresentation claims without stating the misrepresentations made and merely by pointing to "exemplary" instances of alleged fraud. To allow as much would prejudice X's right and ability to defend itself against these serious accusations.

DATED: January 8, 2025                    Respectfully submitted,

**SAWYER & LABAR LLP**

By: */s/ Adrian Sawyer*
 Adrian Sawyer

Adrian Sawyer, State Bar No. 203712
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820
sawyer@sawyerlabar.com

**GIBBS & BRUNS LLP**
David Sheeren *(pro hac vice)*
dsheeren@gibbsbruns.com
Caitlin Halpern *(pro hac vice)*
chalpern@gibbsbruns.com
Mark Doré *(pro hac vice)*
mdore@gibbsbruns.com
Nick Beachy *(pro hac vice)*
nbeachy@gibbsbruns.com
1100 Louisiana St # 5300
Houston, TX 77002
713-650-8805 *(phone)*
713-750-0903 *(fax)*

*Attorneys for Defendant X Corp.*