UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WIWYNN CORPORATION,<br><br>        Plaintiff,<br><br>       v.<br><br>X CORP.,<br><br>        Defendant. | Case No. 24-cv-05322-AGT<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 37 |

       Wiwynn Corp. built custom IT products for Twitter, Inc., for nearly eight years. The relationship ended in 2022, after Elon Musk acquired Twitter and renamed it X Corp.

       Before the split, Wiwynn had spent tens of millions of dollars procuring custom components for Twitter's forecasted projects. After X Corp. scrapped those plans, Wiwynn demanded that X Corp. pay for the procured but unused custom components. X Corp. refused, so Wiwynn filed this civil action, pleading claims for breach of contract and implied covenants, promissory estoppel, and intentional and negligent misrepresentation.

       Wiwynn amended its complaint once as a matter of course. Now X Corp. has moved to dismiss all claims in the first amended complaint. For the reasons articulated below, the Court will grant in part and deny in part the motion.[1]

---

[1] None of the claims turn on Twitter's name change, so below the Court will refer only to X Corp. even when discussing events that occurred before Twitter became X Corp.

**I.**

Wiwynn and X Corp.'s commercial relationship was governed by a master purchase agreement ("MPA"), which the parties executed in 2014. Front and center in this lawsuit is whether the MPA requires X Corp. to pay for custom components that Wiwynn procured based on X Corp.'s forecasts but didn't use after X Corp. stopped buying Wiwynn's products. Wiwynn says the MPA requires X Corp. to pay for these custom components, while X Corp. says the opposite.

On a motion to dismiss a contract claim, the critical question is whether plaintiff's interpretation of the contract is reasonable. If it is, the Court must allow the claim to proceed. *See Sisley v. Sprint Commc'ns Co.*, 284 F. App'x 463, 466 (9th Cir. 2008) (reversing Rule 12(b)(6) dismissal when plaintiff "based her allegation that [defendant] breached the contract on a reasonable interpretation of the contract").

Wiwynn offers a reasonable interpretation of the MPA. Wiwynn's interpretation relies heavily on MPA § 4.3.3, which reads as follows:

> Forecast[s] provided by [X Corp.] for [Wiwynn's] standard Components are non-binding. For non-standard Components (any Components that are customized per [X Corp.'s] request), [X Corp.] anticipates providing [Wiwynn] with a six-month rolling forecast.

Dkt. 26-3 at 5.

Section 4.3.3 doesn't state that X Corp.'s forecasts are non-binding, full stop. It says X Corp.'s forecasts for *standard* components are non-binding. This phrasing suggests that the parties intended to treat forecasts for standard and customized components differently. For in contract (as in statutory) interpretation, the "mention of one matter implies the exclusion of all others." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) (quoting *Steven v. Fid. & Cas. Co. of New York*, 58 Cal. 2d 862, 871 (1962)) (applying the maxim of

2

*expressio unius est exclusio alterius* in interpreting a contract). Or stated more concretely in the context of the MPA, § 4.3.3's statement that forecasts for standard components are non-binding "implies the exclusion of all other[]" forecasts as non-binding, *id.*, meaning forecasts for custom components are plausibly binding.[2]

An implicit obligation isn't as strong as an affirmative one, of course. It invites doubt and leaves room for other interpretations—room that wouldn't have existed if the MPA had stated explicitly that X Corp.'s forecasts for custom components were binding. In this interpretive space, X Corp. downplays § 4.3.3's implicit obligation and emphasizes other terms in the MPA, which support X Corp.'s contention that it agreed to pay for ordered and delivered products only, not unused custom components. *See* MTD, Dkt. 37 at 11–19.

Which side has the better reading of the MPA is a question to be answered on another day. For now, it's enough that Wiwynn has offered a reasonable reading of the MPA, under which X Corp.'s forecasts for custom components are binding. X Corp. didn't pay Wiwynn for certain forecasted custom components, so as alleged, X Corp. breached MPA § 4.3.3.[3]

**II.**

In addition to its contract claim, Wiwynn pleads claims for promissory estoppel, negligent misrepresentation, and intentional misrepresentation. These claims, too, are based on Wiwynn's contention that X Corp. promised (but failed) to pay for custom components; but

---

[2] The product exhibits that were incorporated into the agreement (MPA § 14.13), can reasonably be read as embracing this understanding: they specify that "non-binding six (6) month forecast[s]" are "subject to Section 4.3.3 of the MPA." *E.g.*, Dkt. 26-4 at 11. Section 4.3.3 states only that forecasts for *standard* components are non-binding.

[3] Because X Corp. plausibly breached MPA § 4.3.3, the Court won't separately evaluate at the pleading stage whether X Corp. also plausibly breached other express or implied MPA provisions. *See* FAC ¶ 38 (alleging breach of MPA § 11.3, the termination clause); *id.* ¶¶ 48–52 (alleging breach of the implied covenant of good faith and fair dealing).

unlike the contract claim, they stretch too far.

Contract claims and promissory estoppel claims are "mutually exclusive." *Distance Learning Co., Inc. v. Silly Monkey Studios, LLC*, No. 16-CV-06943-SK, 2017 WL 9613958, at *2 (N.D. Cal. Feb. 14, 2017) (citing *Healy v. Brewster*, 59 Cal. 2d 455, 463 (1963); *Avidity Partners, LLC v. State*, 221 Cal. App. 4th 1180, 1208 (2013)). When, as here, parties execute an agreement and exchange consideration, "traditional contract principles" govern. *Morgan v. Aurora Loan Services, LLC*, 2012 WL 12952304, at *6 (C.D. Cal. Aug. 13, 2012) (citing *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 275 (2011)).

Likewise, the economic loss rule "bars a party from bringing tort claims in a breach of contract action for pure economic loss 'unless [the plaintiff] can demonstrate harm above and beyond a broken contractual promise.'" *Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP*, No. 15-CV-05789-JST, 2016 WL 1394360, at *5 (N.D. Cal. Apr. 8, 2016) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)).

Exceptions to these rules exist, but they don't apply here. Chiefly, when the *existence* of a contract is in dispute, the plaintiff may plead contract and promissory estoppel claims in the alternative. *See KST Data, Inc. v. Northrop Grumman Sys. Corp.*, 2017 WL 10519638, at *4–5 (C.D. Cal. Nov. 16, 2017) (discussing this scenario). Here, X Corp. concedes that the MPA exists; it just reads the MPA differently than Wiwynn does. The existence of the contract isn't in dispute, so a promissory estoppel claim cannot be pled in the alternative.

Similarly, courts recognize an exception to the economic loss rule when the plaintiff alleges fraud in the inducement. *See Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *6–8 (N.D. Cal. Apr. 16, 2018). This exception isn't applicable here because no factual allegations suggest that X Corp.

4

fraudulently induced Wiwynn to sign the MPA. Only after the MPA had been in effect for nearly eight years and Elon Musk purchased X Corp. did the parties' dispute arise.[4]

Based on what's been alleged, this is a breach-of-contract case. There's no room for Wiwynn's promissory estoppel and fraud-based claims.

### III.

The complaint and motion briefing put the custom-component issue on center stage. In passing, Wiwynn raises a second issue: Wiwynn alleges that in 2022, X Corp. agreed, via email, to pay for some excess *standard* components if Wiwynn acquired them, but that X Corp. later reneged and left Wiwynn with the bill. *See* FAC ¶¶ 21–23, 27 & Ex. D.

X Corp. asserts that the 2022 email isn't enforceable because the MPA, by its terms, "constitutes the complete and exclusive understanding and agreement of the parties with respect to [its] subject matter," and requires "[a]ny waiver, modification or amendment" to be "in writing and signed by the parties." MPA § 14.13. Because of this integration clause, X Corp. also says Wiwynn couldn't have reasonably relied on the 2022 email as needed to pursue promissory estoppel or fraud-based claims predicated on it.

Wiwynn offers no response, making no attempt to engage with the integration clause. "The implication of this lack of response is that any opposition to the argument is waived." *City of Arcadia v. EPA*, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003). To the extent that Wiwynn's claims are based in part on the 2022 email, the claims are inadequately pled.

### IV.

The Court grants in part and denies in part X Corp.'s motion to dismiss. The motion

---

[4] The California Supreme Court has recognized several other exceptions to the economic loss rule, *see Robinson Helicopter*, 34 Cal. 4th at 989–90, but Wiwynn hasn't invoked them.

is granted as to Wiwynn's promissory estoppel and misrepresentation claims and granted as to claims that are based on the 2022 email attached as Exhibit D to the first amended complaint. The motion is denied as to Wiwynn's core breach of contract claim.

Because this order marks the first judicial evaluation of the pleadings, the Court will give Wiwynn leave to amend its complaint. If Wiwynn intends to file a second amended complaint, it must file it by February 21, 2025. If Wiwynn doesn't file an amended complaint by then, X Corp. must answer the operative complaint by February 28, 2025.

**IT IS SO ORDERED.**

Dated: January 31, 2025

Alex G. Tse
United States Magistrate Judge